NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GABRIELLA L., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY,
J.L., E.L., *Appellees*.

No. 1 CA-JV 17-0498
FILED 5-29-2018

Appeal from the Superior Court in Maricopa County
No. JS 518475
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1        Gabriella L. ("Mother") appeals the juvenile court's order terminating her parental rights to her children, J.L. and E.L. (collectively, the "children"). She only challenges the juvenile court's finding that termination of her parental rights is in the children's best interests and not the statutory grounds for termination. For the reasons explained, we affirm.

**FACTS AND PROCEDURAL BACKGROUND[1]**

¶2        In 2014 J.L. (the "older son") and E.L. (the "younger son") were removed from Mother's home and adjudicated dependent (the "first dependency"). DCS initiated the first dependency when police provided information that the older son had sustained serious injuries from Mother's physical abuse, including bruising on his forearms, severe bruising on his legs, and swollen hands.[2] Mother pled guilty to child abuse, a class six undesignated felony and domestic violence offense.[3] The first dependency was dismissed in December 2016, after Mother completed reunification services.

---

[1] "[W]e view the evidence and reasonable inferences to be drawn from it in the light most favorable to sustaining the court's decision." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

[2] School officials first reported the abuse to the Mesa police who then contacted DCS. At the start of the first dependency the older son was six years old and the younger son was eight months old. There was no indication the younger son was physically abused in the first dependency.

[3] In November 2014, the superior court suspended the imposition of sentence, ordered Mother to serve three months in the county jail, and ordered four years' probation.

¶3 Four months later, DCS filed a second dependency petition and again removed the children from Mother's home (the "current case"). When DCS initiated dependency proceedings in the current case, the older son was eight years old and the younger son was three years old. DCS alleged Mother was unable to parent because of her mental health, alleging she attempted to overdose on muscle relaxers but eventually called 911. Subsequently, she was put in inpatient treatment at a mental health facility. DCS also alleged neglect based on the inpatient treatment and substance abuse. The next month, DCS petitioned to terminate Mother's parental rights. DCS alleged neglect and willful abuse. Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(2). DCS identified the 2014 abuse of the older son, and claimed Mother used physical discipline on both children and attempted suicide while the children were present and in her care. DCS also alleged prior removal under A.R.S. § 8-533(B)(11).

¶4 The juvenile court held the contested dependency and severance hearings in a single proceeding. Valerie Ducharme, the DCS caseworker, testified Mother beat the older son with a stick so severely in 2014 that he was unable to sit or write. In contrast, Mother testified she only "popped" the older son and denied he incurred any injuries. DCS became more concerned in the current case when, after removal, the children disclosed, and Mother admitted, that Mother was still using physical punishment, which now extended to the younger son, consisting of slapping the children on their hands. Mother acknowledged she learned non-physical disciplinary techniques during the first dependency, but she still believed physical discipline was appropriate. She admitted she would "pop" the children's hands. Mother claimed the "popp[ing]" was "not the same as before."

¶5 DCS was also concerned that Mother had stopped providing the older son with medication for his schizoaffective disorder—a condition for which the older son began receiving treatment and medication during the first dependency. Ducharme testified that without medication the older son experienced symptoms of paranoia, aggression, and rage. She further testified the older son's behavior improved when he was engaged in services for his schizoaffective disorder during the first dependency. Mother denied the older son had schizoaffective disorder, or any other condition, and claimed DCS told her he had ADHD. She admitted that she waited until the first dependency was dismissed to stop giving the older son his medication, and never consulted a physician before discontinuing the medication.

¶6        Mother noticed no change after she stopped giving the older son his medication and testified the older son's behavior continued to be "good." She claimed the older son did not "act out" at home, and believed that any behavioral issues were just him being "rebellious." Ducharme testified the older son's foster father (who was also his foster father during the first dependency) immediately noticed a change in the older son's behavior when he was returned to his care. Foster father relayed to DCS that it took about a month to get the older son back into his medication regimen and to get his behaviors under control again. Ducharme also testified she had observed that the older son on medication was "more mellow," slept better, and had better focus, whereas without medication he tended to "shut down."

¶7        Mother also denied using cocaine in the current case, despite testing positive for cocaine, and positive for alcohol, both of which constituted a violation of her probation for the child abuse conviction.[4] Mother admitted she missed her last three urinalysis tests. Despite evidence to the contrary, Mother denied attempting to overdose or needing inpatient treatment, testifying she called 911 because her "kidneys were hurting" after taking three or four prescribed pills and antibiotics.[5]

¶8        The juvenile court adjudicated the children dependent. The juvenile court then terminated Mother's parental rights after finding DCS had proven the ground of neglect and willful abuse and the ground of prior dependency by clear and convincing evidence, and by a preponderance of the evidence that termination of Mother's parental rights was in the children's best interests.

## DISCUSSION

¶9        Mother argues the juvenile court's best interests findings are "defective" because the court failed to consider "DCS's plan for the children to become adopted separately."

¶10        To terminate the parent-child relationship the juvenile court must find at least one statutory termination ground by clear and convincing evidence, A.R.S. §§ 8-533(B), -537(B), and by a preponderance of the

_____

        [4] Mother also tested positive for marijuana, but produced a medical marijuana card at the contested hearing.

        [5] Mother was previously diagnosed with depression and testified she received medication for "sleep" and to "[re]gain her appetite."

evidence that termination is in the child's best interests, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). To show termination is in a child's best interests requires DCS to show either an affirmative benefit from termination or a detriment by continuing the parent-child relationship. *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23 (App. 2013). "In a best interests inquiry . . . we can presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016). We will affirm a termination order supported by reasonable evidence. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 16 (App. 2016).

¶11 The juvenile court found the children's foster homes provided safe and nurturing environments. The younger son was thriving in his temporary placement and was adoptable, and the older son had returned to his prior adoptive placement and was receiving his prescribed medications and therapies. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010) (affirmative benefits include availability of adoptive placement, whether placement is meeting child's needs, whether children are adoptable). The court also found if Mother's rights were not terminated the children would continue to be exposed to substance abuse, corporal punishment, and unsafe housing. Mother does not contest the court's findings. Nor does she contest the statutory grounds found by the juvenile court, which include findings that her continued use of corporal punishment, drugs, and her refusal to follow medical protocol for the older son rendered her unable to discharge her parental responsibilities. *See Bennigno R.*, 233 Ariz. at 350, ¶ 23 ("[I]n most cases, the presence of a statutory ground will have a negative effect on the children.") (citation omitted).

¶12 Instead, Mother cites *Alma S. v. Dep't of Child Safety*, 778 Ariz. Adv. Rep. 24, ¶ 37 (App. Nov. 14, 2017) (review granted May 8, 2018), for the proposition that "permanent separation" of bonded sibling is generally not in a child's best interests. Mother misconstrues the holding in that case. *Alma S.* held that adoptability and a placement meeting a child's needs were, alone, insufficient to support a finding that termination was in a child's best interests; the court then concluded the record in that case did not support the juvenile court's best interests findings in light of other factors, like the parent's exemplary completion of services, that termination would serve to separate the bonded siblings, and that the parent was living in a safe home. *Id.* at ¶¶ 33-38. Here, the juvenile court's findings that Mother had not, and would not, provide a safe home free from physical or substance abuse, or one in which the older son would receive his prescribed

medications and therapies, are not only unchallenged on appeal, but also supported by the record. As such, *Alma S.* is not applicable in this setting.

¶13        Mother also relies on A.R.S. § 8-513(D) which requires DCS to make reasonable efforts to place a child in an out-of-home or adoptive placement with the child's siblings or, if not possible, maintain frequent visitation or ongoing contact unless a court determines such is contrary to the child's or sibling's safety or well-being. Mother's reliance is misplaced. The testimony and evidence demonstrate that DCS complied with A.R.S. § 8-513(D). For instance, Ducharme testified that although the children had a bond with each other, it was not possible to put them in the same out-of-home placement. Nonetheless, the older son's adoptive placement and the younger son's non-adoptive placement had facilitated contact between the brothers. Ducharme expected the contact to continue because DCS would try to find an adoptive placement for the younger son that would be interested in maintaining contact between the children. Second, as discussed, the separation of bonded siblings is only one factor that the juvenile court *may* consider in rendering its best interests determination—it is not dispositive.

## CONCLUSION

¶14        For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights to her children.



AMY M. WOOD • Clerk of the Court
FILED:  AA