NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SUMMYR K., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.K., A.K., *Appellees.*

No. 1 CA-JV 18-0061
FILED 8-28-2018

Appeal from the Superior Court in Maricopa County
No. JD30701
The Honorable Alison Bachus, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Kathryn E. Harris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn L. Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**C R U Z**, Judge:

¶1  Summyr K. ("Mother") challenges the superior court's order terminating her parental rights to twins A.K. and A.K., born in February 2016, on the basis of Mother's substance abuse, the children's out-of-home placement for over six months, and a finding that it is in the children's best interests. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2  In June 2015, the Department of Child Safety ("DCS") filed a dependency petition as to Mother's child, A.M., due to Mother's alleged substance abuse.[1] One year later, the twins were added to the dependency petition. DCS alleged that Mother had a current and long history of abusing drugs—including methamphetamine, cocaine, heroin, and prescription medications—had failed to participate in drug testing, and that her substance abuse impaired her ability to provide proper care for the twins. The twins were found dependent as to Mother in early July 2016, and the court adopted a family reunification case plan.

¶3  Mother participated in services through Lifewell Behavioral Wellness through July 2016. But after Lifewell recommended that Mother enter its residential inpatient program, she declined and discharged herself on July 14.

¶4  On August 4, Mother checked into Patina Wellness Center ("Patina"). Mother resided at Patina for only eight days before she was discharged for failing to abide by Patina's rules, using drugs off-site, attempting to bring drugs on-site, and minimizing her negative behaviors.

¶5  On August 16, 2016, while on probation for a narcotics charge and resisting arrest, Mother stabbed her boyfriend and was arrested for

---

[1] A.M. requested and was appointed a permanent guardian, was dismissed as a party to the severance motion, and is not a party to this appeal.

aggravated assault and disorderly conduct. Mother pleaded guilty to misconduct involving a weapon. Mother was incarcerated from August 2016 until December 2017.

¶6            Meanwhile, given Mother's lack of progress, DCS moved to change the case plan to severance and adoption in February 2017, and later moved to terminate her rights to the twins on the six-month out-of-home placement and substance-abuse grounds. Upon her release from prison, DCS provided Mother with referrals for drug testing, substance-abuse treatment, and a case-aide. The court held a contested severance hearing on January 2, 2018, and took DSC's motion to terminate Mother's parental rights to the twins under advisement. On February 13, 2018, the court granted the motion, terminating Mother's parental rights to the twins on both grounds and also finding termination was in their best interests.

¶7            Mother timely appealed, challenging the sufficiency of the evidence for both statutory grounds and best interests. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235, 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶8            Mother claims the court's order terminating her parental rights on both the six-month out-of-home placement ground and the substance abuse ground is not supported by reasonable evidence.

¶9            The superior court may terminate parental rights if DCS proves a § 8-533(B) statutory ground by clear and convincing evidence, *Michael J. v. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000), and that termination is in the children's best interests by a preponderance of the evidence, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). We do not reweigh evidence on appeal and will affirm the superior court's factual findings if supported by reasonable evidence in the record. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97, ¶ 6 (App. 2016).

I.      Substance Abuse Ground

¶10            The court may terminate a parent's rights under A.R.S. § 8-533(B)(3) if it finds by clear and convincing evidence "the parent is unable to discharge [their] parental responsibilities because of . . . a history of chronic abuse of dangerous drugs [or] controlled substances . . . and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." In addressing termination pursuant to A.R.S. § 8-533(B)(3), the court may consider any admissible evidence,

including evidence of the length and frequency of the substance abuse, substances abused, behaviors associated with the abuse, prior efforts to maintain sobriety, and prior relapses, in determining whether reasonable grounds exist to believe the condition will continue for a prolonged period. *See Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 20 (App. 2016).

¶11        Mother asserts the superior court abused its discretion by severing her parental rights on this ground. But reasonable evidence supports the court's order. Mother testified that before her incarceration, she participated in family reunification, sought counseling at Lifewell, and participated in drug testing, indicating she was taking steps to remedy her substance-abuse problem. However, Mother admitted she tested inconsistently, and a June 2016 status report indicated Mother refused to test on multiple occasions because she had recently unlawfully ingested medications. Additionally, Mother's landlord reported her using methamphetamine and cocaine, and a June 2016 hair sample tested positive for amphetamine, methamphetamine, morphine, heroin, and opiates. Lifewell records indicate Mother used heroin or morphine, and methamphetamines, three to six times per week. Despite this evidence, Mother believed that her drug use did not endanger the twins because she waited roughly three days after each use before breastfeeding. In July 2016, Lifewell assessed Mother as a high risk due to her refusal to abstain from mind-altering substances, noting that it appeared Mother was only seeking treatment to avoid consequences and to appease others. Lifewell recommended that Mother enter its residential inpatient program, but she declined.

¶12        Although Mother completed previous treatment programs, she repeatedly relapsed, including after the twins were born, and agrees she has a long history of substance abuse. Lifewell records show Mother has trouble maintaining sobriety despite nearly a year-and-a-half of working with counselors. Mother claims she is currently sober, but the superior court properly could balance temporary abstinence against a significant history of abuse and inability to abstain. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 29 (App. 2010). Mother also participated in services while in prison, and stated her desire to continue to participate in services to maintain sobriety, but she has relapsed in the past when not incarcerated. *See id.* (discussing evidence of a parent's inability to rise above their addiction in a "non-custodial and unstructured setting"). Before her arrest, Mother's progress with Lifewell was described as "slow" and then "regression." During her short stay at the Patina in August 2016, Mother told the clinicians that she "just like[s] to get high," blamed DCS

and others for her troubles, and continued to abuse drugs despite being in a treatment facility.

¶13 Regarding the impact Mother's substance abuse had and would have on her ability to parent the twins, Mother relapsed and repeatedly used drugs after the twins were born, and DCS reports indicated she left the twins with others so she could use drugs. Mother was in and out of treatment facilities, was incarcerated, and had a previous charge for narcotics possession. *See id.* at 377-78, ¶ 19 (noting that A.R.S. § 8-533(B)(3) does not require a finding that the parent be unable to discharge *any* parental responsibilities, but that the drug use prevents the parent from discharging the collective "parental responsibilities"). Although Mother was currently sober, she testified at the severance hearing that if she were an objective viewer she would want to see more stability to see that she "was going through with the services and that [her sobriety] could be prolonged."

¶14 For the foregoing reasons, termination pursuant to A.R.S. § 8-533(B)(3) is supported.

¶15 Although termination of Mother's rights was also based on the six-month out-of-home placement ground, because we affirm on grounds of substance abuse, we need not evaluate whether reasonable evidence supported the court's order on other grounds. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

II.     Best Interests

¶16 Mother also claims termination is not in the twins' best interests. When considering the children's best interests, the court must balance the unfit parent's diluted interest in parenting against the independent interests of the children in a safe and stable home life. *Kent K.*, 210 Ariz. at 286, ¶ 35. The party seeking severance has the burden to show, by a preponderance of the evidence, that termination is in the children's best interests based on consideration of the possible benefits of reunification, the benefits of termination, and the potential continued harm to the children if the parental relationship continues. *See* A.R.S. § 8-533(B) ("[I]n considering any of the following [statutory] grounds, the court shall also consider the best interests of the child[ren]."); *Dominique M.*, 240 Ariz. at 98, ¶¶ 8, 12 (discussing a totality of the circumstances, consideration regarding affirmative benefits of termination, the removal of a detriment to the children if the parent-child relationship is not severed, and the existence of a bonded relationship between the biological parent and child).

¶17　　　　Here, the court considered Mother's substantial and lengthy history of substance abuse, evidence of Mother's inability to achieve permanent sobriety before her incarceration, and evidence that Mother was incarcerated for misconduct involving a weapon and disorderly conduct while on probation for previous charges. The evidence supports a finding that termination would remove a detriment if the parent-child relationship continued. Additionally, DCS personnel testified the children were in an adoptive placement that was meeting their needs. This evidence further supports the court's finding that termination was in the twins' best interests.

## CONCLUSION

¶18　　　　We affirm the superior court's order terminating Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:　AA