NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
### DIVISION ONE

JENNIFER S., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, Z.S., *Appellees.*

No. 1 CA-JV 15-0333
FILED 5-3-2016

Appeal from the Superior Court in Maricopa County
No. JD527006
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Law Office of Holly A. Bartee, Chandler
By Holly A. Bartee
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Donn Kessler joined.

---

**W I N T H R O P**, Judge:

¶1      Jennifer S. ("Mother") appeals the juvenile court's order terminating her parental rights to Z.S. ("the child").[1] Mother challenges the statutory bases found by the juvenile court in severing her parental rights. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**[2]

¶2      Mother, born in 1977, is the biological mother of the child. Mother has a long history of substance abuse—including alcohol, marijuana, cocaine, lysergic acid diethylamide (LSD), and methamphetamine—which began when she was fourteen years old. While on probation[3] between 2010 and 2012, she twice finished drug treatment and, absent "a couple of slip ups," achieved a total of approximately one year of sobriety through the help of TERROS, but then relapsed and again began using methamphetamine. She used methamphetamine throughout her pregnancy in 2012 and 2013, despite her awareness of potential "developmental issues" resulting from the drug abuse, and declined prenatal care with the child.

---

[1]      The juvenile court also terminated the parental rights of the child's father ("Father"), listed as "John Doe." Father is not a party to this appeal.

[2]      We view the facts and reasonable inferences therefrom in the light most favorable to affirming the juvenile court's order. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010).

[3]      Mother was placed on concurrent terms of two years' probation after pleading guilty to one count of facilitation to commit aggravated taking the identity of another person or entity, a class six felony, and one count of possession of marijuana, a class one misdemeanor. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 13-2009 (Supp. 2015), -3405(A)(1) (Supp. 2015).

¶3        When the child was born in June 2013, both Mother and the child tested positive for methamphetamine. The child was premature and significantly underweight, but was eventually sent home with a safety monitor to live with Mother, who was unemployed and lived in a one-bedroom apartment with a friend ("Michael"), who also had a history of substance abuse.[4]

¶4        While the child was with Mother, DCS made clear Mother was to remain sober and offered her services—including drug testing through TASC, substance abuse treatment through TERROS, and parenting services through Healthy Families Arizona and Family Preservation. Mother, however, did not fully comply with the services. She failed to engage in substance-abuse treatment through TERROS; moreover, she twice failed to show up at TASC for urinalysis testing and failed to urinate on five other occasions before submitting to a hair follicle test and oral swab, both of which came back positive for methamphetamine on August 23, 2013. She failed to show up for testing at least two more times before submitting to a September 3 urinalysis test, which came back positive for methamphetamine. Nevertheless, she denied using illegal drugs. Shortly thereafter, DCS removed the child from Mother's care and placed the child in the temporary care of a licensed foster placement.[5]

¶5        On September 11, 2013, DCS filed a dependency petition alleging the child was dependent based on Mother's substance abuse and neglect. Although Mother denied the allegations in the petition, she waived her right to contest them and submitted the dependency issue to the

---

[4]        In the years before living with Michael, Mother had lived with other friends, but had not been included on any lease. At the time Mother testified at the severance hearing, she continued to live with Michael. Mother testified that, although she "didn't work for a few years," she began working part-time a few months before the severance hearing as a caretaker for a friend, who was "very flexible" as to the hours worked and paid her $10.00 per hour in cash.

[5]        The child was taken into care by Child Protective Services ("CPS"), formerly a division of the Arizona Department of Economic Security ("ADES"), and ADES filed the subsequent dependency petition in this case. In May 2014, however, CPS was removed as an entity within ADES and replaced by DCS, an entity outside of ADES. *See* 2014 Ariz. Sess. Laws, ch. 1, §§ 6, 20, 54 (2d Spec. Sess.). Accordingly, DCS was substituted for ADES in this matter, *see* ARCAP 27, and references to DCS in this decision encompass both ADES and the former CPS.

juvenile court, which found the child dependent as to Mother in October 2013.

¶6            The court approved a case plan of family reunification concurrent with severance and adoption.  To further the goal of family reunification, DCS required that Mother fully resolve her problem with drug abuse and offered her services through TASC and TERROS, as well as parent aide services and a psychological consultation contingent on her sobriety.

¶7            Over the next year, Mother generally engaged in the services offered by DCS, but her continued problems with drug abuse—specifically, methamphetamine—affected her success with those services.  For example, between February and September 2014, Mother engaged in parent aide services, and Mother's parent aide sought to assist her in securing stable housing and employment.  Mother's parent aide service referral did not close successfully, however, because Mother had not achieved transitional or unsupervised visitation with the child based on her ongoing substance abuse.  Also, Mother's scheduled August 2014 psychological evaluation was postponed due to a lack of sobriety.

¶8            Because Mother's prior service referral with TERROS had closed due to her lack of compliance, she engaged in substance-abuse treatment through Valle Del Sol for approximately four months before transferring back to TERROS in late January 2014.  At the intake assessment with TERROS, the assessor concluded Mother was at "medium" risk of relapse, in part because she believed she could continue to associate with other illegal-drug users without negatively affecting her ability to maintain sobriety.[6]  Between late January and early August 2014—despite Mother's expressed confidence in her ability to maintain sobriety and denials she was using drugs—she often tested positive for methamphetamine through TERROS and refused to enter inpatient treatment.  Thus, her TERROS referral again closed.

¶9            In addition to the drug testing administered through TERROS, DCS also offered Mother random drug tests through TASC. From the day of the child's removal through December 2013, however, Mother refused to take fifteen tests and tested positive for methamphetamine five times.  Over the next seven months—through July 2014—she again tested positive for methamphetamine five times.  Moreover, although she

---

[6]      As previously noted, Mother continued to live with Michael, who had at some point been charged with possession of dangerous narcotics.

sometimes tested negative for banned drugs, Mother had been using a device that utilized other, apparently nonhuman, urine to achieve those results, and she was caught using that device in August 2014. From late August through September 2014, Mother tested positive for methamphetamine nine times and refused to test four times. At a September 2014 report and review hearing, the juvenile court granted DCS's motion to change the case plan to severance and adoption.

¶10　　　　On October 2, 2014, DCS moved to terminate Mother's parental rights to the child based on a history of chronic substance abuse, *see* A.R.S. § 8-533(B)(3) (Supp. 2015), as well as the nine-month and six-month out-of-home placement grounds under § 8-533(B)(8)(a) and (b), respectively. By this time, the child had been in DCS's care for approximately thirteen months. DCS later amended its motion, adding the fifteen-month out-of-home placement ground under A.R.S. § 8-533(B)(8)(c).

¶11　　　　Approximately one month after the severance motion was filed, Mother again used methamphetamine. She then self-referred to an inpatient treatment program offered through Casa de Amigas, acknowledging she lacked the motivation to become sober until the case plan had changed to severance and adoption. She finished the thirty-day residential treatment program and subsequently completed the twelve-week aftercare plan. From December 2014 until the severance hearing, she tested negative for methamphetamine.[7] She also continued to attend support groups and Narcotics Anonymous meetings, began participating in counseling in late April 2015, completed a parenting educational program offered through the Family Resource Center, completed a psychological evaluation on December 17, 2014, and continued regular visitation—including partially unsupervised visitation—with the child.

¶12　　　　Despite Mother's efforts in the months immediately preceding the severance hearing, the juvenile court held a contested severance hearing on June 9 and 10 and August 12, 2015. The parties later submitted written closing arguments, and in an order filed September 24, 2015, the court terminated Mother's parental rights on each of the grounds alleged, finding in part as follows:

> On December 17, 2014, Mother participated in a psychological evaluation with Dr. [Celeste] Korsten. Dr. Korsten concluded that Mother's drug history, including

---

[7]　　　In April and May 2015, however, Mother tested positive on three occasions for opiates; specifically, hydrocodone and hydromorphone.

using methamphetamine on a daily basis for ten years, prevent[s] her from effectively parenting until she demonstrates sobriety for at least a year and sustains stable employment and housing. . . . Dr. Korsten testified that given Mother's history of relapsing after maintaining sobriety for more than a year, a demonstration of sobriety for longer than a year is needed to minimize drug relapse.

DCS made reasonable and diligent efforts to provide Mother with rehabilitative services. The dependency case began in September 2013. Before then, DCS provided Family Preservation Services[,] which proved unsuccessful. After the dependency case was filed, DCS offered services including drug testing and treatment, parent-aide services, psychological evaluation and individual counseling. Mother did not begin to fully participate in services until the case plan changed to severance and adoption in October 2014.

Mother has demonstrated sobriety since October 2014 and continues to participate in counseling and visitation. However, given her significant drug abuse history, her relapse history, and her failure to engage in services for over a year after the dependency petition was filed, the Court concludes that her chronic substance abuse is not resolved and there are reasonable grounds to believe that it will continue for a prolonged indeterminate period. Mother is not able to parent until her drug issues are resolved. This means she needs to demonstrate sobriety for longer than one year.

The court also found that severance was in the child's best interest, in part because it would provide him "with emotional stability and permanency."

¶13 Mother filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 8-235(A) (2014) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

**ANALYSIS**

¶14 Mother argues the juvenile court erred in finding DCS proved by clear and convincing evidence the chronic substance abuse ground under A.R.S. § 8-533(B)(3) and the three out-of-home placement grounds under A.R.S. § 8-533(B)(8)(a), (b), and (c). In support of her argument, Mother maintains she completed the psychological evaluation and parent aide services provided her by DCS, exercised visitation throughout the

dependency, self-referred and completed additional services, had been clean and sober from methamphetamine for months before the severance hearing, had begun participating in counseling, had recently enrolled in online college courses, and by the end of the severance hearing, was living by herself and had achieved some level of employment.

¶15        Parents possess a fundamental liberty interest in the care, custody, and management of their children. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24, 110 P.3d 1013, 1018 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶ 11, 995 P.2d 682, 684 (2000)). Even fundamental rights are not absolute, however. *Id.* (citing *Michael J.*, 196 Ariz. at 248, ¶ 12, 995 P.2d at 684). A court may sever those rights if it finds clear and convincing evidence of one of the statutory grounds for severance, and finds by a preponderance of the evidence that severance is in the child's best interest. *See* A.R.S. §§ 8-533(B), -537(B) (2014); *Kent K.*, 210 Ariz. at 281–82, 288, ¶¶ 7, 41, 110 P.3d at 1015–16, 1022.[8]

¶16        The juvenile court retains great discretion in weighing and balancing the interests of the child, parent, and state. *Cochise Cty. Juv. Action No. 5666-J*, 133 Ariz. 157, 160, 650 P.2d 459, 462 (1982). As the trier of fact in a termination proceeding, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18, 219 P.3d 296, 303 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4, 100 P.3d 943, 945 (App. 2004)). Thus, the resolution of conflicts in the evidence is uniquely the province of the juvenile court, and we will not reweigh the evidence in our review. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12, 53 P.3d 203, 207 (App. 2002); *see also Pima Cty. Adoption of B-6355*, 118 Ariz. 111, 115, 575 P.2d 310, 314 (1978) ("In considering the evidence it is well settled that an appellate court will not substitute its own opinion for that of the trial court." (citation omitted)). We will not disturb the juvenile court's order unless no reasonable evidence supports its factual findings. *Matthew L.*, 223 Ariz. at 549, ¶ 7, 225 P.3d at 606.

---

[8]        Mother does not contest the juvenile court's finding that severance was in the best interest of the child and, thus, has waived any challenge to that finding in this appeal. *See Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 459, ¶ 29, 11 P.3d 413, 418 (App. 2000) (stating that issues not raised in appellate briefs are deemed waived).

¶17 Subsection (3) of A.R.S. § 8-533(B) provides for termination of parental rights when a parent's history of chronic substance abuse renders the parent "unable to discharge parental responsibilities" and "reasonable grounds" exist "to believe that the condition will continue for a prolonged indeterminate period." Chronic substance abuse is long-lasting but not necessarily constant substance abuse. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16, 231 P.3d 377, 381 (App. 2010). A parent's "temporary abstinence from drugs and alcohol does not outweigh [her] significant history of abuse or [her] consistent inability to abstain during [the] case." *Id.* at 379, ¶ 29, 231 P.3d at 383. Moreover, "children should not be forced to wait for their parent to grow up." *Id.* at 378, ¶ 25, 231 P.3d at 382 (quoting *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998)). Accordingly, a child's interest in permanency must prevail over a parent's uncertain battle with drugs. *Id.* at 379, ¶ 29, 231 P.3d at 383 (citing *In re N.F.*, 579 N.W.2d at 341).

¶18 Although Mother made an attempt to stop her drug use, reasonable evidence supports the juvenile court's order terminating Mother's parental rights on the ground of chronic substance abuse. Mother concedes she has a significant history of substance abuse dating from the age of fourteen through the birth of her child, and the record indicates her continued substance abuse caused DCS to remove the child from her care, institute dependency proceedings, and eventually move for severance. As we discuss in more detail below, reasonable evidence existed showing that her chronic substance abuse rendered her "unable to discharge parental responsibilities."

¶19 Mother argues that reasonable grounds do not exist to believe the condition will continue for a prolonged indeterminate period, and her "history [of chronic substance abuse] is irrelevant to th[at] analysis." We disagree.

¶20 As the trier of fact, the juvenile court could consider the evidence of Mother's prior substance abuse in evaluating whether reasonable grounds existed to conclude her inability to discharge parental responsibilities would continue for a prolonged indeterminate period. This evidence included the length and frequency of Mother's substance abuse, the types of substances abused, behaviors associated with the substance abuse, prior efforts to maintain sobriety, and prior relapses.

¶21 In this case, Mother and the child tested positive for methamphetamine upon the child's birth. Mother showed no sobriety after DCS intervened but before DCS removed the child, and although Mother

engaged in some services, she did not engage in substance-abuse treatment through TERROS, refused to take most of her required drug tests, and tested positive for methamphetamine before the child's removal, despite denying she was using illegal drugs. For more than a year after the child's removal, Mother continued to refuse tests, tested positive for methamphetamine, and refused inpatient treatment—causing her TERROS referral to again close—despite being warned the juvenile court could terminate her parental rights if she substantially neglected or willfully refused to remedy the circumstances that caused the child's removal. Moreover, she raised questions about the validity of her negative tests after she was caught using a device that utilized urine other than her own and consistently tested positive after being caught. Even after the juvenile court granted DCS's motion to change the case plan to severance and adoption, Mother used methamphetamine approximately one month later.

¶22 Meanwhile, after Mother had begun making efforts to maintain sobriety because the case plan had changed to severance and adoption, she was finally able to submit to a psychological evaluation performed by Celeste Korsten, Psy.D., on December 17, 2014. Dr. Korsten diagnosed Mother with "Other Specified Personality Disorder with Antisocial Personality Features" because of Mother's "reckless disregard for the safety of herself and her child," as well as with "Stimulant Use Disorder, Severe, in Early Remission," and "Child Neglect, Subsequent Encounter." Dr. Korsten opined that Mother's "pervasive methamphetamine use" impacted her ability to parent, explaining that "[t]rends in the research suggest that parents who use methamphetamine place their children at risk." She concluded Mother must show "at least" a year's sobriety and gain stable housing and employment before she could adequately parent the child, and noted Mother had a high risk of relapse "given that [she] used methamphetamine on a daily basis for 10 years."

¶23 At trial, Dr. Korsten opined that it was "concerning" if Mother had been sober for a year in the past and then relapsed because "the highest rate of relapse occurs within the first year, and, again, there's a lot of stressors that can present themselves." Consequently, Dr. Korsten recommended Mother show sobriety for "at least" a year and a half to two years before the child could be returned to her. Dr. Korsten opined that Mother is "at a high risk to relapse," and could not currently provide proper and effective parental care and control for the child because she had not maintained long-term sobriety. Further, although Mother's recent efforts at maintaining sobriety and utilizing services increased her chance for a long-term recovery, her prognosis remained "[un]favorable."

¶24 Mother's assigned DCS case manager also cautioned against family reunification, noting concerns about Mother's extensive drug history, deception and lying, social environment, and potential for relapse. The case worker opined that Mother could not minimally adequately parent the child due to her history with substance abuse, which continued to cause "a great concern."

¶25 Although Mother made efforts to achieve and maintain sobriety in the months immediately preceding the severance hearing, her abstinence from methamphetamine during that period does not outweigh her significant history of drug abuse or her consistent inability to abstain during the majority of the case. Reasonable evidence supports the juvenile court's conclusion that Mother's history of chronic substance abuse rendered her unable to discharge parental responsibilities and that reasonable grounds exist to believe the condition will continue for a prolonged indeterminate period. Accordingly, the juvenile court did not err in concluding the child's interest in permanency should prevail over Mother's uncertain battle with drugs.[9]

**CONCLUSION**

¶26 The juvenile court's order terminating Mother's parental rights to the child is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama

---

[9] "If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M.*, 203 Ariz. at 280, ¶ 3, 53 P.3d at 205 (citations omitted); *see also* A.R.S. § 8-533(B) (requiring that evidence sufficient to justify the termination of the parent-child relationship include "any one" of the enumerated termination grounds). Because the record supports the order terminating Mother's parental rights on the ground of chronic substance abuse, we do not address the parties' arguments regarding the three time-in-care grounds on appeal.