NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TABORSHA W., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, N.W., *Appellees.*

No. 1 CA-JV 16-0514
FILED 8-3-2017

Appeal from the Superior Court in Maricopa County
No.  JD 527612
The Honorable Timothy J. Ryan, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellee, Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Randall M. Howe joined.

---

C A M P B E L L, Judge:

¶1          Taborsha W. ("Mother") appeals the juvenile court's order terminating her parental rights to daughter, N.W. Mother argues the juvenile court erred in finding the Department of Child Safety ("DCS") made diligent efforts to provide her with appropriate, timely reunification services and she would not be able to safely reunify with N.W. in the near future.[1] Since reasonable evidence supports the juvenile court's findings[2], we affirm. *See Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

## FACTS AND PROCEDURAL HISTORY

¶2          Mother is the biological parent of N.W. DCS initiated a dependency action in April 2014, when Mother was sixteen and a ward of the State. DCS became involved when staff at Mother's group home reported Mother was engaging in violent altercations with a resident and group home staff. They also alleged Mother was neglecting her child. The juvenile court subsequently found N.W. dependent as to Mother.

¶3          DCS developed a plan for reunification and identified the goals Mother must achieve before the return of N.W. To facilitate Mother's efforts, DCS provided Mother case management services, behavioral therapy, counseling, a psychological evaluation and mental health medication, a parent aide, a case aide for supervised weekly visitation,

---

[1]      Because Mother has not challenged the juvenile court's best interests findings, we do not address that requirement.  *See State v. Carver*, 160 Ariz. 167, 175 (1989) (claims not raised in an opening brief are usually waived).

[2]      We review the record in the light most favorable to sustaining the juvenile court's decision. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted).

parenting classes, and transportation. DCS offered these services throughout the dependency action.

¶4         DCS moved for severance in January 2016, when Mother was an adult, on the ground that N.W. had been in out-of-home placement for a cumulative period of fifteen months or longer, she had been unable to remedy the circumstances causing the out-of-home placement, and a substantial likelihood existed that Mother would be unable to exercise proper and effective parental control in the near future. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(8)(c). The court set a severance trial for November 2016.

¶5         Evidence presented to the court showed that Mother failed to complete the parenting aide program twice because she did not reach her parenting goals and resisted the parent aide's directions. Further, Mother failed to attend her one-on-one parenting sessions and only attended half of the supervised visits with her child. Additionally, Mother would not take her prescribed mental health medication and did not fully cooperate in the individual counseling services DCS had arranged.

¶6         The DCS case manager testified about Mother's inability to control her anger. While the dependency was pending, Mother threatened group home staff members with violence and argued incessantly. Mother continued to engaged in this inappropriate behavior during her supervised visits, with the child present. DCS also presented evidence that Mother hit a group home staff member in the head and put her hands around the staff member's neck; hit a cab driver in the face; kicked a group home resident in the face, causing a bloody nose; engaged in an argument with a resident and threated her with a knife; and hit a different resident.

¶7         Mother presented evidence that she had enrolled in online schooling. She also found her own counseling services, started employment as a cashier and at the end of September, 2016, obtained her own housing.

¶8         While acknowledging Mother's progress, the DCS case manager testified Mother had not made the behavioral changes necessary to safely parent her child during the two and one half years of DCS involvement. From the time her child was removed until July 2016, the case manager did not observe discernable effort by Mother to change the circumstances and behaviors that caused the removal. The case manager testified Mother was not ready to be discharged from counseling and would likely have to participate for an "indeterminate" period of time. Mother's

current counselor testified that Mother would need to continue counseling to address and learn to manage her anger issues.

¶9        At the conclusion of the trial, the juvenile court entered an order terminating Mother's parental rights, and Mother timely appealed.

## DISCUSSION

¶10        Mother first argues the juvenile court erred in finding DCS made diligent efforts to provide appropriate reunification services. She claims that "[a]pproximately nine critical months were lost due to lack of diligence on the part of DCS" in receiving counseling services[3]. *See* A.R.S. § 8-533(B)(8), (D). Termination under A.R.S. § 8-533(B)(8)(c) requires clear and convincing evidence that: (1) the child has been in out-of-home placement for a cumulative period of fifteen months or longer, (2) the parent has been unable to remedy the circumstances that caused the out-of-home placement, and (3) a substantial likelihood exists that the parent will not be capable of exercising proper and effective parental care and control in the near future. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 12 (App. 2011). Additionally, DCS "must provide [reunification] services to the parent with the time and opportunity to participate in programs designed to help [him or] her to become an effective parent." *Id.* at 235, ¶ 14 (citation omitted). DCS's obligation to provide reunification services requires DCS to "undertake measures with a reasonable prospect of success in reuniting the family." *Jordan C.*, 223 Ariz. at 94, ¶ 20 (citation omitted).

¶11        Here, DCS continuously provided, in addition to counseling, a variety of other services over the two and one half years in which the case was pending, aimed at facilitating family reunification. *See supra* ¶ 3. The State does not dispute a delay occurred in Mother's receiving counseling services at one point during the dependency action. However, when counseling was stalled, DCS took alternate steps to help Mother by

---

[3]        Without identifying any legal basis or supporting authority, Mother also argues DCS had an even greater duty to provide her with reunification services because she was a minor ward of the State. We reject this argument. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 348, ¶ 11 (App. 2013) (appellate court may reject an argument based on lack of proper and meaningful argument alone) (citations omitted); ARCAP 13(a)(7) (opening brief must set forth an argument that includes citations to legal authorities); Ariz. R.P. Juv. Ct. 106(A).

providing her one-on-one behavioral coaching and a referral for other high-needs case management providers. Mother also conceded that at no time when she asked for counseling services did DCS fail to provide the requested services. Accordingly, reasonable evidence supports the juvenile court's finding that DCS made a diligent effort to provide appropriate reunification services.

¶12　　　　Mother next argues the juvenile court erred in finding her unable to exercise proper and effective parental care and control in the near future. Mother asserts she has "overcome the barriers that prevented her from reuniting with her child" and "has turned the corner in demonstrating that she can manage her behavior and emotions." This change in behavior is not supported in the record. While Mother began to make progress in July 2016, the progress was minimal. Mother has repeatedly engaged in verbal and physical altercations with those around her. *See supra* ¶ 6. Most recently, Mother engaged in a physical altercation with a group home resident in August 2016. "[C]hildren should not be forced to wait for their parent to grow up." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016) (citation omitted) (parental rights terminated where mother's chronic substance abuse rendered her unable to discharge her parental responsibilities).

¶13　　　　Further, the testimony from Mother's case manager supports the contention that Mother would need to continue counseling for an unknown amount of time before demonstrating that she could be a safe and stable parent to N.W. Accordingly, reasonable evidence supports the juvenile court's finding that Mother would be incapable of exercising proper and effective control in the near future.

## CONCLUSION

**¶14**     For the foregoing reasons, we affirm the order terminating Mother's parental rights

