NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

RYAN D., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.D., *Appellees*.

No. 1 CA-JV 18-0126
FILED 9-20-2018

---

Appeal from the Superior Court in Maricopa County
No. JD 528538
The Honorable John R. Hannah, Judge

**AFFIRMED**

---

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Diane M. Johnsen joined.

---

**C A M P B E L L**, Judge:

¶1        Ryan D. ("Father") timely appeals the termination of his parental rights to his son, L.D. Father argues the superior court erred by terminating his rights based on the length of his incarceration for a felony conviction under Arizona Revised Statutes ("A.R.S.") § 8-533(B)(4) and by finding termination was in the child's best interests. Father essentially asks us to reweigh the evidence in this matter; because it is not our role to do so, we affirm.

## BACKGROUND

¶2        The child was born, substance-exposed to opiates, in February 2015. The Department of Child Safety initiated a dependency based on substance abuse and neglect regarding both Father and S.B. ("Mother").[1] Father and Mother both tested positive for methamphetamine, heroin, codeine, and morphine. During the dependency, Father did not ask DCS to arrange any contact with the child, nor did he ask DCS to arrange for him to participate in any services. Mother successfully completed services and was granted temporary sole decision-making authority in July. The court also directed Mother to allow Father reasonable supervised visitation and parenting time, and the dependency was dismissed as to both parents.

¶3        In July 2016, the child was in the care of both Mother and Father when they were arrested after making unauthorized purchases with a credit card. Father was immediately incarcerated. The police executed a search warrant of Mother's apartment and found the child wearing only a soiled diaper and with drug paraphernalia within his reach. The incident was reported to DCS, and DCS filed another dependency petition based on substance abuse and neglect by both Mother and Father, as well as Father's incarceration. The child was removed from the home and placed with his paternal grandmother.

---

[1]        Mother is not a party to this appeal.

¶4            The superior court found the child dependent as to Father in January 2017. That same month, Father was convicted of credit card theft, a class five felony, and sentenced to 2.25 years of imprisonment with 199 days of presentence incarceration credit. The court changed the case plan to severance and adoption in May 2017, and DCS moved in June to terminate both parents' rights.

¶5            The superior court held a contested termination hearing in December 2017. During the hearing, DCS caseworkers testified to the following: to the extent Father had contact with the child before his incarceration, Father was using drugs and was unable to pay full attention to and care for the child; although Father frequently sent letters and drawings to the child from prison, Father was unable to nurture the parent-child relationship and form a bond with the child because of his absence and the child's young age; even if Father were released as early as April 2018, he would still need to establish housing, income, and sobriety before he could be reunified with the child, which would likely take another year; and while Father's participation in counseling and services in prison would be important to maintaining sobriety, he had not demonstrated he could maintain sobriety outside of the controlled environment of the prison. DCS workers also testified that the child's paternal grandmother was meeting his needs, that the child was bonded to her, that she was willing to adopt him, and that not terminating Father's parental rights would harm the child by depriving him of permanency.

¶6            The superior court terminated Father's rights to the child, finding DCS had met its burden of proof based on his incarceration for a felony conviction and finding termination would be in the child's best interests.

## DISCUSSION

¶7            To terminate parental rights, the superior court must find at least one statutory ground under A.R.S. § 8-533 by clear and convincing evidence, A.R.S. § 8-537(B), and find by a preponderance of the evidence that termination is in the child's best interests, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). As the trier of fact in a termination proceeding, the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted). Therefore, we do not reweigh the evidence on review, *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002), and will reverse the court's order only if no reasonable evidence supports its factual

3

findings, *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 16 (App. 2016).

## I.    Incarceration

**¶8**        The superior court may terminate parental rights if a parent has been convicted of a felony and the sentence is of such length that the child will be deprived of a normal home for a period of years. A.R.S. § 8-533(B)(4). The statute does not define a specific length of incarceration justifying termination; rather, courts must consider the facts and circumstances of the particular case according to all relevant factors, including but not limited to:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Jesus M.*, 203 Ariz. at 281, ¶ 9 (quoting *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251-52, ¶ 29 (2000)). The superior court in this case prepared a thorough ruling with detailed findings of fact regarding the *Michael J.* factors. In his opening brief, Father cites to his own testimony and that of the child's grandmother—that he was able to maintain a relationship with the child during his incarceration, that he writes to the child several times a week, and that he speaks to the child on the phone multiple times a week—but argues only that the superior court should have weighed the available evidence differently. All of the court's findings are supported by reasonable evidence in the record, and we will not reweigh the evidence in Father's favor.

## II.    Best Interests

**¶9**        A determination of a child's best interests must include a finding either that the child will benefit from termination or that the child will be harmed by the continuation of the relationship. *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Whether an existing placement is meeting the needs of a child, as well as the immediate availability of an adoptive placement, are both factors the superior court may consider in determining best interests. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376,

377, ¶ 5 (App. 1998). Here, the superior court concluded by a preponderance of the evidence that the child would benefit from termination and made multiple findings, including the finding that paternal grandmother was providing child with a loving home and intended to proceed to adoption. Again, Father argues that the superior court should have weighed the available evidence differently; because reasonable evidence supports the superior court's findings, we will not do so.

## CONCLUSION

¶10      For the foregoing reasons, we affirm.

