NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BRADLEY T., *Appellant*,

*v.*

SYDNEY W., KEVIN R., J.W., *Appellees*.

No. 1 CA-JV 18-0231
FILED 12-4-2018

Appeal from the Superior Court in Maricopa County
No. JS518233
The Honorable Shellie Smith, Commissioner

**AFFIRMED**

COUNSEL

The Law Office of Denise L. Carroll, Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Jaburg & Wilk, P.C., Phoenix
By Kathi M. Sandweiss, Carissa K. Seidl
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

---

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge James P. Beene and Chief Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

¶1            In this private termination proceeding, Bradley T. ("Father") appeals the juvenile court's order terminating his parental rights to J.W. ("the child") on grounds of chronic substance abuse and abandonment. Father challenges the sufficiency of the evidence on both grounds and argues the court erred in finding that termination is in the child's best interests.  For the following reasons, we affirm.

**BACKGROUND**

¶2            Jessica W. ("Mother") and Father are the biological parents of the child, born in 2014.  The two never married, having known each other for approximately one year before Mother gave birth.  Less than a month after the child's birth, he and Mother left Father's California home and moved to Arizona, where Mother obtained an order of protection against Father.  Mother also filed a petition for legal decision-making and parenting time in Arizona.  Father began his own similar action in California but, in exchange for Mother dismissing the order of protection, agreed to dismiss it and withdraw his objection to the Arizona family court's jurisdiction.  As part of that stipulation, in September 2014, the Arizona family court issued temporary orders requiring Mother to supervise Father's exercise of parenting time and directing him to submit to drug testing.  If Father provided clean tests for six months, testing would cease unless ordered otherwise.

¶3            Father failed to appear at the subsequent hearing on Mother's family court petition.  Proceeding by default, the family court awarded sole legal decision-making to Mother and further limited Father's supervised parenting time to "once a week if Father arranges the visits."  The court noted Father not only failed to drug test as directed, the few tests he completed were either positive for amphetamines or diluted.  The court again ordered Father to submit to drug testing, this time on a weekly basis.  Father admits he did not comply with this order.

¶4        When Mother and the child first arrived in Arizona, they lived with the child's maternal grandmother, Sydney W. ("Grandmother"), and her significant other, Kevin R. (collectively "Petitioners").  Grandmother assisted Mother in providing primary care for the child, doing so for several days a week even after Mother obtained a job and her own residence.  Father lived in Arizona for several months before moving to Wisconsin, where he still resides.  He has not had direct contact with the child since 2014.

¶5        Following Mother's untimely death in September of 2017, Petitioners obtained temporary guardianship over the child.  This matter arises out of their desire to make that status permanent by terminating Father's parental rights and adopting the child as their own.  Following a contested termination hearing, the juvenile court found that Petitioners met their burden of proving abandonment and chronic substance abuse under Arizona Revised Statutes section 8-533(B) and that termination was in the best interests of the child.  Father's timely appeal followed.

## DISCUSSION

¶6        The juvenile court may terminate parental rights if it first finds at least one statutory ground listed in § 8-533(B) by clear and convincing evidence and then finds, by a preponderance of the evidence, that termination serves the child's best interests.  *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149, ¶ 8 (2018).  Our role is "not to weigh the evidence," even if the facts are hotly contested, because resolving conflicting evidence is "uniquely the province of the juvenile court." *Id.* at 151, ¶ 18 (citations omitted).  We therefore "view the evidence in the light most favorable to affirming" the juvenile court's decision and "will only reverse . . . if there is no reasonable evidence to support its findings." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 376, ¶ 13 (App. 2010) (citations omitted).

### A.        Chronic Substance Abuse

¶7        Father argues Petitioners failed to prove by clear and convincing evidence that he would be unable to discharge his parental responsibilities because of chronic and prolonged substance abuse under § 8-533(B)(3).

¶8        The juvenile court may terminate parental rights under § 8-533(B)(3) if the "(1) parent has a history of chronic abuse of controlled substances or alcohol; (2) parent is unable to discharge parental responsibilities because of his chronic abuse . . . and (3) there are reasonable

3

grounds to believe that the condition will continue for a prolonged and indeterminate period." *Id.* at 377, ¶ 15.

¶9            Father first argues the juvenile court erred in relying on the testimony of Dr. Ann Schroeckenstein.  He argues her opinion testimony was significantly flawed because Schroeckenstein "did not talk to Father in the process of creating her report," "did not ask Father or his counsel whether there were any additional records that would be helpful to her document review," and "would not make any recommendations, diagnosis or definitive statements in her report and testimony."  But Father neither argues that the report was inadmissible under Arizona Rule of Juvenile Procedure 45, nor that Schroeckenstein gave improper expert opinion testimony under Arizona Rules of Evidence 702 and 703.  Accordingly, to the extent Father's argument attacks the admissibility of the evidence the juvenile court relied upon, we reject the argument.  And because we do not reweigh the evidence on appeal, we conclude that reasonable evidence—including Schroeckenstein's report and testimony—supports the juvenile court's decision.

¶10            The juvenile court first described how, in 2014, Father once tested positive for amphetamines, twice gave diluted samples, and eventually stopped providing drug tests altogether, even though the family court order required him to engage in weekly drug testing as a condition of exercising his limited parenting time.  Father's failure to comply with this requirement is troubling given that, under the September 2014 temporary orders, testing would cease if Father provided just six months of clean tests.  The court next reviewed Father's legal history, noting each of his four arrests (two of which led to convictions) since 2006 involved drugs or alcohol.  Particularly noteworthy was a conviction stemming from Father's guilty plea to a charge of possession of marijuana with intent to distribute in 2014, nine months after the child's birth.  Significantly, Father told the arresting officer that the eight pounds of marijuana were for his personal use. Also significant was evidence that, within one year of the termination hearing, Father consumed alcohol before an altercation with his parents that led to his arrest for domestic disturbance.  Only after reviewing all this evidence did the court reference Schroeckenstein's opinion, agreeing with her that the evidence showed "patterns of concern related to Father's history of substance use."  The court cited much of this same evidence to conclude Father's substance abuse would make him unable to discharge his parental responsibilities.  Although Father discredits Schroeckenstein for not speaking with him, asking him for additional records, or providing a specific diagnosis, he does not point to other evidence that he offered (or could have) to counter her conclusions.

**¶11** Father also argues that, because two negative drug tests from June and September of 2017 show he is sober now, there are not reasonable grounds to believe his condition will continue for a prolonged period. However, "[i]t is not the number of times that Father has tested positive or negative for drug abuse that is key, . . . rather, it is the fact that he has consistently failed to *abstain* from drugs and alcohol." *Id.* at 379, ¶ 29. To make this finding, the court again looked to Father's interactions with law enforcement, each incident involving drugs or alcohol. It also relied on Father's admission that he had not participated in substance abuse counseling or treatment as well as his own mother's testimony that he drank daily while residing in her home. Given the prominent role alcohol played in his 2017 domestic disturbance arrest, Father's lack of participation in counseling or treatment is particularly compelling evidence, especially considering Schroeckenstein's testimony that the risk of relapse is greatest in the first year. *See Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 288, ¶ 23 (App. 2016). In short, Father has demonstrated a consistent inability to "establish the essential support system to maintain sobriety," meaning the child's interest in permanency must prevail over Father's "uncertain battle." *Raymond F.*, 224 Ariz. at 378–79, ¶¶ 25, 29 (citation omitted).

**¶12** Accordingly, reasonable evidence supports the juvenile court's findings outlined above and its decision to terminate Father's parental rights on the grounds of chronic substance abuse. Thus, we need not address the abandonment ground. *See id.* at 376–77, ¶ 14.

### B.    Best Interests of the Child

**¶13** Father also argues that Petitioners failed to prove by a preponderance of the evidence that termination is in the child's best interests, citing such facts as his requests to see the child via FaceTime and that, over the years, he sent some gifts and cards to the child.

**¶14** For support, Father cites this court's opinion in *Alma S. v. Department of Child Safety*, 244 Ariz. 152 (App. 2017), contending he can "properly parent his child, which demonstrates that severance will result in a considerable detriment to the child." That decision, however, was recently vacated by our supreme court. *Alma S.*, 245 Ariz. at 152, ¶ 23. As the supreme court explained, courts must not "subordinate the interests of the child to those of the parent once a determination of unfitness," by finding a substantive ground for termination, has been made. *Id.* at 151, ¶ 15. Instead, courts should "presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination," and consider, under the totality of

the circumstances, whether the child will either (1) benefit from termination or (2) suffer harm from a failure to terminate. *Id.* at 150–51, ¶¶ 12–13 (citations omitted); *see also Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 12 (2016) ("When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination . . . is in the child's best interests.").

¶15        Addressing bests interests, the juvenile court noted that Grandmother assisted Mother in providing primary care to the child before Mother passed away and that he has resided with her ever since Mother's death. The court explained this placement is meeting the child's needs, relying in part on a social study that describes the child as "an articulate, healthy, well-mannered child who is actively involved in his preschool and with friends in the family's neighborhood." The court also found, supported by Schroeckenstein's report, that failure to sever would likely harm the child because "reunification with Father, with whom the child has virtually no memory of, would likely have a detrimental emotional effect on the child, especially given the untimely loss of his mother." Based on Petitioners' demonstrated history of providing for the child, and their commitment to adopt him, the court found termination would benefit the child. *See Demetrius L.*, 239 Ariz. at 5, ¶¶ 16–17 ("A child may . . . reap benefits from adoption, warranting a best-interests finding primarily on that basis, even in a private severance action and when the child is not a ward of the state."). Because the record supports these findings, the court did not err in finding that termination is in the child's best interests.

## CONCLUSION

¶16        The juvenile court's order terminating Father's parental rights is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA