NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

EBERARDO L., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.A., *Appellees.*

No. 1 CA-JV 20-0108
FILED 8-18-2020

---

Appeal from the Superior Court in Maricopa County
No. JD35642
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

---

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Cynthia J. Bailey joined.

**H O W E**, Judge:

**¶1**            Eberardo L. ("Father") appeals the juvenile court's order terminating his parental rights to A.A. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**            Father and Krystle L. ("Mother")[1] had one child together, A.A., who was born substance-exposed in March 2018. At the time of A.A.'s birth, Father was in prison on a parole violation from a conviction of conspiracy to transport methamphetamine. The Department of Child Safety removed A.A. from Mother's home in August 2018, after being adjudicated dependent. Father was released from prison that same month. A.A. was later adjudicated dependent as to Father in October 2018, after he failed to appear at the dependency hearing.

**¶3**            After Father was released from prison, the Department's case manager met with him and told him about the case and the services he needed to complete. Father was referred to TASC in September 2018 to complete drug testing. He submitted to only one test in 2018 that was positive for marijuana. He tested three times in 2019 and the results were all negative. He then tested six times in 2020, with one positive test for methamphetamine one month before trial. He also had a prior history of substance abuse, testing positive for methamphetamine, cocaine, and marijuana multiple times in 2016 and 2017.

**¶4**            Father was referred for supervised visitation with A.A. in September 2018. He attended visits with A.A. in October and November 2018. At one of his November 2018 visits, Father became agitated when A.A. started to cry. He attempted to leave the visitation center with A.A. to take her to the hospital, telling the case aide that A.A. "is being raped." The case aide called the police, who told Father to leave. As a result, Father's supervised visitation was suspended. He was told that his supervised

_____

[1]      Mother is not a party to this appeal.

visitation would be reinstated if he completed random drug testing and had a psychological evaluation. The Department psychologist recommended that Father not be referred for a psychological evaluation until after he demonstrated sobriety through drug testing. The psychologist was concerned that Father's substance abuse could skew the results of a psychological evaluation. After December 2018, the Department lost contact with Father until June 2019. The Department attempted several "parent locates" but was unable to locate him.

¶5 Father was referred for substance abuse counseling through TERROS in September 2018 and November 2018, but the referrals were closed for lack of communication. The Department referred Father to TERROS again in December 2019. Father scheduled an intake appointment with TERROS and, during the intake, denied having any history of substance abuse. He tested negative for drugs at the intake meeting and, as a result, he was not recommended for services with TERROS.

¶6 Father was arrested in January 2019 for possession of a dangerous drug and was in jail until June 2019. After he was released, he appeared at Mother's court hearing on June 7, 2019, but was told to return on July 25, 2019, to attend his scheduled hearing. The Department lost contact with Father again from June 2019 until December 2019. Father failed to appear at his July 2019 and August 2019 court hearings. In October 2019, Father was admitted to a hospital with psychiatric symptoms. He was diagnosed with schizo-affective disorder and treated with psychotropic medication. The hospital referred Father to TERROS to see a doctor for follow-up treatment after his release in November 2019.

¶7 In December 2019, the Department moved to terminate Father's parental rights, alleging the six, nine, and fifteen months' out-of-home placement grounds defined in A.R.S. § 8–533(B)(8)(a), (b), and (c). The Department also alleged that Father abandoned A.A. as defined in A.R.S. § 8–533(B)(1). In the meantime, Father completed two parenting classes in February 2020.

¶8 At a March 2020 termination hearing, Father denied that he ever used methamphetamine. He only admitted that he used marijuana but said that he had a medical marijuana card. He agreed that he could not parent his daughter if he used methamphetamine. He also admitted that he had not received any new drug treatment since he was released from prison in August 2018. He testified that he was not employed but planned to find employment. He further testified that at some point down the road, he

would be able to care for A.A. and that he planned to work with the Department and continue doing services.

¶9 The case manager testified that the Department still had concerns about Father's substance abuse because Father was not honest about his substance abuse history with TERROS, had not engaged in consistent drug testing, and had tested positive for methamphetamine one month before the hearing. She also testified that Father had never discussed his marijuana use with her or disclosed a medical marijuana card to her. She further testified that Father needed to demonstrate sobriety before he could receive a psychological evaluation. She testified that Father did not maintain a normal parent-child relationship with A.A. and that between November 2018 and December 2019, he never called A.A., never sent her letters, cards, or gifts, and never provided support for her.

¶10 The case manager testified that A.A. was first placed with her maternal great aunt in August 2018, but after Father continued to harass the maternal great aunt by requesting to see A.A. outside supervised visitation, and showing up at her home, A.A. was moved to her maternal uncle's home in February 2019. The case manager opined that termination of Father's parental rights was in A.A.'s best interests because A.A. had been involved with the Department for two years and severance would provide stability and permanency.

¶11 The juvenile court terminated Father's parental rights to A.A. under the six and fifteen months' out-of-home placement grounds. *See* A.R.S § 8–533 (B)(8)(b), (c). The court found that the Department made diligent efforts to provide Father services, including supervised visitation, drug testing, substance abuse treatment, and parenting classes. The court also found that Father substantially neglected or willfully refused to remedy the circumstances that caused A.A.'s out-of-home placement because he did not communicate with the Department, he was incarcerated for significant periods of time, and he did not participate in the services offered until just a few months before the termination hearing. The court also found that termination was in A.A.'s best interests because she was in an out-of-home placement for over 18 months, resided in a kinship placement, would have permanency and stability, and Father had almost no bond with her. Father timely appealed.

**DISCUSSION**

¶12 Father challenges only the juvenile court's finding that the Department made diligent efforts to provide him reunification services

4

because it failed to provide him with mental health services. We review a juvenile court's termination order for an abuse of discretion. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58 ¶ 9 (App. 2015). We will affirm an order terminating parental rights if reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009). To terminate parental rights, a court must find by clear and convincing evidence that at least one of the statutory grounds in A.R.S. § 8–533 has been proven and must find by a preponderance of the evidence that termination is in the child's best interests. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4 (App. 2002).

**¶13**      A juvenile court may terminate a parent's parental rights when a child has been in an out-of-home placement for a cumulative total period of at least fifteen months (or six months if the child is under 3), when the Department has made a diligent effort to provide appropriate reunification services, when the parent has substantially neglected or willfully refused to remedy the circumstances that caused the placement, and when a substantial likelihood exists that the parent "will not be capable of exercising proper and effective parental care and control in the near future." A.R.S § 8–533(B)(8)(b), (c). While the Department must provide reunification services to a parent with the time and opportunity to participate in programs designed to help him become an effective parent, the Department is not required to provide every conceivable service. *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235 ¶¶ 14–15 (App. 2011).

**¶14**      Reasonable evidence supports the juvenile court's finding that the Department made diligent efforts to provide reunification services to Father. A.A. was placed in an out-of-home placement because of, among other things, Father's substance abuse issues. The Department referred Father for substance abuse counseling, random drug testing, and supervised visitation. The Department referred him for substance abuse counseling twice in 2018. And when Father failed to communicate with the Department, it made multiple attempts to locate him but was unable to because of his incarceration from January through June 2019 on possession of dangerous drug charges.

**¶15**      Father failed to keep in contact with the Department and failed to appear at his court hearings in July and August 2019. And when the Department referred him to TERROS for a third time in December 2019,

he denied any history of substance abuse, despite his positive drug test results and criminal history involving drugs. He also sporadically participated in random drug testing and submitted a positive drug test for marijuana in October 2018 and methamphetamine in February 2020.

**¶16**        Father further claims that the Department should have referred him for a psychological evaluation. Even though the Department had concerns about Father's mental health, the Department was not required to offer him every conceivable service. *See Christina G.*, 227 Ariz. at 235 ¶ 15. Here, the case manager consulted with the Department's psychologist, who recommended that Father complete drug treatment and drug testing first to prevent his psychological evaluation from being skewed. Father did not consistently participate in random drug testing and did not disclose his previous substance abuse history to TERROS. Had he complied with drug testing and provided accurate information at his TERROS assessment, the Department would have referred him for a psychological evaluation. Even so, Father received treatment for his mental health when he was diagnosed and treated during his hospitalization in 2019. After receiving treatment for his mental health diagnosis, Father still failed to remedy the circumstances that caused A.A.'s out-of-home placement when he tested positive for methamphetamine one month before the termination hearing.[2] Therefore, Father's argument fails and the juvenile court correctly found that the Department made diligent efforts to offer him appropriate reunification services.

## CONCLUSION

**¶17**        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[2]        We need not address the juvenile court's best interests findings because Father does not challenge them on appeal.