NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

IN RE TERMINATION OF PARENTAL RIGHTS AS TO X.B. and D.B.

No. 1 CA-JV 23-0226
FILED 5-7-2024

———————————————

Appeal from the Superior Court in Maricopa County
No. JD42860, JS21376
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

———————————————

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Jennifer R. Blum
*Counsel for Appellee DCS*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda Adams
*Counsel for Appellee Children*

_____

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Anni Hill Foster and Judge Brian Y. Furuya joined.

_____

**H O W E**, Judge:

**¶1**         Vanessa M. ("Mother") appeals the juvenile court's order terminating her parental rights to her son, X.B., born in February 2019, and her daughter, D.B., born in November 2022, on the grounds of abuse and neglect. We affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**         We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). Mother is the biological parent of X.B. and D.B. Juan P. is X.B.'s father and Adrian F. is D.B.'s father.[1] In April 2023, Mother and Adrian F., with whom Mother lived, took X.B. to the hospital because he complained about pain in his stomach. A medical examination of X.B. revealed a bowel perforation and abdominal bruising, requiring immediate surgery.

**¶3**         Based on this examination, the hospital contacted the Department of Child Safety stating its belief that Mother and Adrian F. were physically abusing X.B. The Department and the Phoenix police launched a joint investigation. During the investigation, Mother stated that X.B. was developmentally delayed, nonverbal, and autistic. She also stated that X.B. had been suffering flu-like symptoms for about five days before she brought him to the hospital. Finally, she stated alternative causes for X.B.'s bowel perforation, such as his falling while playing in a football game and falling off a scooter a few weeks ago. The hospital's medical professionals determined that such falls could not have caused X.B.'s injury; instead, his injury was caused by "very high-impact trauma like a motor vehicle accident." The investigation also revealed that Mother had brought

_____

[1]         Juan P. and Adrian F. are not parties to this appeal; their parental rights were terminated.

2

X.B. to the hospital the night before but had left before X.B. received treatment.

¶4        About a week later, Adrian F. admitted during questioning that he physically abused X.B. "a lot" in the past. He explained that he did so to relieve the anger and frustration resulting from his fights with Mother. He claimed that X.B.'s current injury was unintentional and that he had told Mother about it. Adrian F. was arrested and charged with child abuse.

¶5        D.B. also underwent a medical examination, which revealed a bite mark on her shoulder. Mother could not explain how D.B. sustained the bite mark. The Department then petitioned to have X.B. and D.B. declared dependent as to Mother because of Mother's abuse and neglect, and the juvenile court declared them dependent. Later, the Department also petitioned to terminate Mother's parental rights as to X.B. and D.B., alleging abuse and neglect under A.R.S. § 8-533(B)(2). The Department offered Mother family preservation services, parenting sessions, substance-abuse testing, substance-abuse assessment and treatment, and visitation. She engaged in the services provided.

¶6        At the termination hearing, the Department's case supervisor testified that the Department did not seek to reunify the children with Mother because of the significant trauma and abuse that X.B. had suffered. She also testified that completion of services does not necessarily mean that the parent has made behavioral changes to negate the termination, and that if Mother was communicating with Adrian F., she had made no behavioral changes. Finally, she testified that termination of Mother's parental rights was in the children's best interests because it would provide them with a permanent placement in a stable, loving, and non-abusive home.

¶7        Mother testified that she has had no contact with Adrian F. since he was arrested. Later during the hearing, the Department presented records that Mother had exchanged over 600 texts with Adrian F. since he was arrested. In these texts she expressed anger towards him for harming the children but at the same time a desire to reunite with him.

¶8        The juvenile court found that the Department proved neglect and abuse as grounds for termination of Mother's parental rights. It found that Mother "knew or reasonably should have known" that Adrian F. was abusing X.B. The court made no findings about the Department's reasonable efforts to reunify the family because "[t]he statute did not require [such] a finding." It also found that termination was in the children's best interests because they would not be subject to abuse and

neglect. It therefore terminated Mother's parental rights. Mother timely appealed, and this court has jurisdiction. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

**¶9**         Mother argues that the juvenile court erred in finding that the Department was not required to provide her reunification services. Although Mother did not raise this objection in the juvenile court, *Shawanee S. v. Ariz. Dep't. of Econ. Sec.*, 234 Ariz. 174, 178–79 ¶¶ 16–18 (App. 2014), in the exercise of our discretion, we nevertheless address her argument, *Clemens v. Clark*, 101 Ariz. 413, 414 (1966).

**¶10**         Our supreme court has directed us to "affirm a termination order unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence." *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478 ¶ 29 (2023). Our review is conducted using a two-part analysis. *Id.* at ¶ 30. First, we "review the factual findings made by the juvenile court, and its factual findings will be accepted if reasonable evidence and inferences support them." *Id.* (internal citations omitted). Second, we assess "the juvenile court's legal conclusions regarding the statutory ground for termination—which must be established by 'clear and convincing' evidence at the juvenile court level"—and will affirm unless these conclusions are clearly erroneous. *Id.* at 478–79 ¶ 31. "In making this determination, the question of whether the statutory factor is supported by the mandated quantum of evidence will not be disturbed unless [we] determine[] as a matter of law that no one could reasonably find the evidence to" constitute the applicable quantum. *Id.* at 479 ¶ 31.

**¶11**         To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one statutory ground under A.R.S. § 8-533, and by a preponderance of the evidence that termination would be in the child's best interests. A.R.S. § 8-533(B); *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). One such ground is neglect, A.R.S. § 8-533(B)(2), which is "[t]he inability or unwillingness of a parent . . . of a child to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a).

**¶12**         The juvenile court did not err in finding that the Department was not required to provide Mother with reunification services. Section 8-533(B)(2) contains no express language requiring the Department to make

reasonable efforts to provide reunification services before termination under the neglect or abuse ground. Nor has any Arizona court required such services when termination is sought under such ground. *See Toni W. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 61, 64, 66 ¶¶ 9, 15 (App. 1999) (recognizing that the legislature amended § 8-533(B) to remove the requirement that services be provided before termination on the ground of abandonment under A.R.S. § 8-533(B)(1) and finding no constitutional duty to provide services before seeking termination on that ground). Mother cites no authority for the proposition that reunification services must be provided when the ground for termination is neglect or abuse. The Arizona legislature did not list the abuse or neglect ground as the ground under which the Department is required to provide reunification services, as it did with other grounds. *See* A.R.S. § 8-533(D). We cannot inject such a requirement into § 8-533(B)(2). *State v. Gonzalez*, 216 Ariz. 11, 14 ¶ 10 (App. 2007) ("[I]t is not within either the trial court's or this court's authority to amend a statute." (citation omitted)).

¶13        Mother concedes that nothing in § 8-533(B)(2) requires the Department to provide reunification services. But relying on *Jessie D. v. Dep't of Child Safety*, she argues that due process required the Department to provide her with reunification services. 251 Ariz. 574 (2021). In *Jessie D.*, our supreme court held that when the Department seeks to terminate parental rights under the length-of-sentence ground, it has a constitutional duty to make reasonable efforts to "initiate measures designed to address an incarcerated parent's desire to maintain a parent-child relationship." *Id.* at 582 ¶ 21. Because the ground for termination here is neglect or abuse and Mother was not incarcerated, *Jessie D.* does not apply.

¶14        Mother further argues that the court also erred because it did not make written findings about whether the Department made reasonable efforts to provide reunification services to her. But the court was not required to make such findings because, as explained in ¶¶ 12–13, the statute does not require reunification efforts. Mother has thus shown no error.

**CONCLUSION**

¶15        We affirm.

