NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARIA D., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, B.M., M.M., J.M., C.M., *Appellees*.

No. 1 CA-JV 18-0310
FILED 3-19-2019

Appeal from the Superior Court in Maricopa County
No.  JD32120
The Honorable Joseph C. Kreamer, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee, Department of Child Safety*

―――――――――――――――

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Randall M. Howe joined.

―――――――――――――――

**C A M P B E L L**, Judge:

¶1         Maria D. ("Mother") appeals the juvenile court's order terminating her parental rights to her four children. For the following reasons, we affirm.

## BACKGROUND

¶2         Mother has four children: B.M., born in October 2004, M.M., born in July 2006, J.M., born in December 2008, and C.M., born in March 2012.[1] In February 2016, police discovered that the youngest child's father was dealing methamphetamine, crack, heroin, and marijuana from the family's home. The drugs were within reach of the children. The home was unkempt: dirty clothes, clutter, and rotting food abounded. The children's beds were filthy and the walls had holes and graffiti. The case worker reported she saw cockroaches and a rat inside the home. The Department of Child Safety ("DCS") took custody of the children and filed a dependency petition. In the ensuing investigation, DCS learned that Mother and the youngest child's father had a history of committing acts of domestic violence in front of the children. Mother also submitted to a drug test that returned positive for cocaine.

¶3         One month later, the court found the children dependent and set a case plan of family reunification as to Mother. DCS referred Mother for substance-abuse testing, a psychological evaluation, a parent aide, and provided her with information on applying for housing assistance. DCS also required Mother to self-refer to domestic-violence counseling but agreed they would provide a referral if she was unable to obtain her own provider.

¶4         Mother consistently tested negative for substances but missed several tests through November 2017. Her ensuing engagement with drug testing improved and she continued to test negative. Mother completed a

―――――――――――――――

[1]         The children's fathers are not parties to this appeal.

psychological evaluation. The psychologist concluded that Mother's prognosis for parenting the children in the future was poor because she struggled with "neglectful, self-centered, and avoidant behavior." The psychologist expressed concern about Mother's "lack of stable housing and employment, and a tendency . . . to depend on others for food and shelter." She was also concerned that Mother lacked the ability to meet her children's special needs and recommended Mother participate in counseling and a bonding assessment. She recommended Mother continue with substance-abuse testing and parent-aide services and "demonstrate financial and residential stability."

¶5        Mother did not successfully complete her first parent-aide service because of her infrequent attendance, and when she did attend, she did not demonstrate appropriate engagement in services. Meanwhile, the children displayed problematic behaviors from their exposure to domestic violence, including aggressiveness, fighting, and bullying. Additionally, one of the middle children began displaying sexualized behaviors and required specialized help in school.

¶6        Mother continued to struggle to develop protective instincts and parenting skills. Mother completed a bonding assessment, in which the therapist found that, although Mother possessed some sort of a bond with the three boys, she appeared disconnected, especially with her daughter, B.M. The therapist noted that Mother displayed little affection towards the children and, at times, "seemed more interested in playing with the toys than engaging with her children." The therapist concluded Mother would have difficulty managing all the children at the same time, which would be even more difficult given her children with special needs.

¶7        DCS referred Mother for individual and family counseling and a second parent aide. The parent aide expressed similar concerns: Mother often failed to redirect the children, had unapproved people at visits, and inconsistently attended her one-on-one sessions. Mother also continued to deny that her child had displayed sexualized behaviors, though she received reports of the issue on numerous occasions. Mother allowed her boyfriend to buy one of the children a cell phone even though DCS had not approved him to have contact with the child, illustrating her inability to protect the child. Ultimately, Mother failed to successfully complete the second parent-aide service because she did not make the required behavioral changes. She did not complete family counseling either. Mother also struggled to find stable employment and appropriate housing for the children. It was not until about March 2017 that she

obtained arguably appropriate housing for the four children—a shared two-bedroom apartment.

¶8          In March 2018, the court changed the case plan to severance and adoption, and DCS moved to terminate Mother's parental rights under the fifteen-month out-of-home placement ground. The court granted the termination motion after holding a contested termination hearing over two days in July. Mother timely appealed the order.

## DISCUSSION

### I.          Termination Ground

¶9          Mother challenges two of the juvenile court's findings under the fifteen-month out-of-home placement ground, arguing the evidence suggests she was able to remedy the circumstances that brought her children into care and that DCS failed to prove there is a substantial likelihood she will not be capable of exercising proper and effective parental care and control in the near future.

¶10          We will affirm the juvenile court's termination order "unless no reasonable evidence supports its factual findings." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 16 (App. 2016).  The juvenile court is the trier of fact; this court will not reweigh the evidence and we view the evidence and reasonable inferences drawn from it in the light most favorable to sustaining the juvenile court's decision. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).  To terminate a parent's parental rights, the juvenile court must find at least one statutory ground under Arizona Revised Statutes ("A.R.S.") section 8-533 by clear and convincing evidence, A.R.S. § 8-537(B), and find by a preponderance of evidence that termination is in a child's best interests, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005).

¶11          The court may terminate parental rights if (1) DCS made a diligent effort to provide appropriate reunification services, (2) the child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order, (3) the parent has been unable to remedy the circumstances that caused the child to be in an out-of-home placement, and (4) there is a substantial likelihood that the parent will not be capable of exercising effective parental care and control in the near future. A.R.S. § 8-533(B)(8), (B)(8)(c). "Circumstances" means "those circumstances existing at the time of the severance that prevent a parent from being able to appropriately provide for his or her child[ren]." *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330 (2007) (citation omitted).

¶12 Mother first challenges the court's finding that she was unable to remedy the circumstances that caused the out-of-home placement, arguing she participated in services to develop necessary skills to care for her children and ensure their safety. However, Mother did not successfully complete either parent-aide referral; the closure report of the first referral noted that Mother "does not understand the concept of safety." Mother admitted to engaging in domestic violence with the youngest child's father and the children disclosed that they saw him physically and verbally abuse her. Mother acknowledged she needed to address the effects of domestic violence through services, but failed to do so. The failure to complete services illustrates Mother's failure to internalize the damage caused by domestic violence, develop protective parenting skills, and appreciate the need to make necessary behavioral changes.

¶13 The juvenile court had "significant concerns regarding whether Mother now has or ever will have true insight into the impact domestic violence has had on her children." The children repeatedly expressed that when Mother allows a male into her life, they feel anxious and fearful because they have experienced and witnessed domestic violence in the past. Two of the children revealed they were having nightmares about Mother's boyfriend hurting her and themselves. Although the case manager relayed the children's fears to Mother, she continued to allow her boyfriend to transport her to and from visits. Mother was dismissive of her children's fears: she testified she did not understand why the children were afraid of him because they "don't know him." Accordingly, the case manager testified that Mother lacked insight into the necessity of protecting her children.

¶14 Mother was unable to obtain housing that would accommodate her children and their special needs by the severance hearing. Although she obtained a two-bedroom apartment, she shared the space with her adult daughter and her grandchild and conceded that the apartment was not appropriate for seven people. The court ultimately found Mother failed to remedy the circumstances that caused the out-of-home placement and sufficient evidence supports this finding.

¶15 Mother next challenges the court's finding that there is a substantial likelihood she will not be capable of exercising proper and effective parental care and control in the near future. The court found that though Mother made some improvements—such as accepting responsibility for exposing her children to domestic violence and drugs—she "still does not demonstrate the insight necessary to safely parent her children." At the time of the severance hearing, Mother had failed to obtain

appropriate housing, refused to acknowledge the impact of domestic violence on her children and their fears regarding her current boyfriend, and did not see a need to repair her fractured relationship with her oldest child—all of which are factors that directly impact her ability to exercise proper care in the future. The court noted that she had nearly double the fifteen-month statutory period to address these issues and failed to make necessary changes to suggest she would be able to exercise proper and effective parental care in the future.

## II.    Best Interests

**¶16**        Lastly, Mother challenges the juvenile court's best-interest finding, arguing she has a bond with her children, the visits went well, and any adoption is uncertain.

**¶17**        Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Kent K.*, 210 Ariz. at 286, ¶ 35. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018). Relevant factors in this determination include whether the current placement is meeting the child's needs, an adoption plan is in place, and the child is adoptable. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3-4, ¶ 12 (2016).

**¶18**        Mother argues that she shares a bond with the children. Although a factor to consider, a bond is not dispositive of the best-interests issue. *See Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98-99, ¶ 12 (App. 2016). Here, the court considered Mother's bond with the children when it reviewed the bonding assessment, which stated that Mother "loves her children" but "appears disconnected" with them. Moreover, the record supports a finding that the children would suffer a detriment if Mother's parental rights were not terminated. The children had been in an out-of-home placement for about twenty-nine months. In that time, Mother had not shown insight into their special needs or her role as a protective and nurturing parent. Accordingly, the case manager testified that the children

needed permanency, including a caregiver that met their medical and behavioral needs and provided a safe and stable housing environment.

**¶19**      The record also supports the court's determination that the children would benefit from severance. The case manager testified that the children's current placements met their needs and that they were adoptable despite their special needs. Additionally, DCS had identified an adoptive placement for all four children, a family friend of B.M.'s, who knew of the children's special needs. The placement lived out of state, and DCS had initiated an Interstate Compact on the Placement of Children ("ICPC") to determine if the home would be appropriate for the children. The case manager testified that approval of the ICPC was likely to occur in the near future.

**¶20**      Citing *Titus S. v. Department of Child Safety*, 244 Ariz. 365, 370-71, ¶ 22 (App. 2018), Mother argues that the children's adoption must be likely, not just possible to support a best-interests finding and that the children's aggressive behaviors and other special needs "could potentially sabotage" any future placements. *Titus S.* is distinguishable because the children in that case consistently withheld their consent to adoption, and their consent was necessary for adoption. *Id.* at 370-71, ¶¶ 22-24; *see* A.R.S. § 8-106(A)(3). Here, however, B.M. and M.M., who were older than twelve, informed the case manager that they would consent to an adoption.

**CONCLUSION**

**¶21**      We affirm the juvenile court's order terminating Mother's parental rights.

