NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BERGEN C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, R.C., W.C., *Appellees*.

No. 1 CA-JV 18-0446
FILED 7-23-2019

Appeal from the Superior Court in Navajo County
No. S0900JD201800001
The Honorable David J. Martin, Judge *Pro Tem*

**AFFIRMED**

COUNSEL

Southwestern Law Center, Tucson
By David Gurney
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Michelle R. Nimmo
*Counsel for Appellee, Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

---

**C A M P B E L L**, Judge:

**¶1**          Bergen C. ("Father") appeals the juvenile court's order terminating his parental rights to his two children on the grounds of neglect and a prior termination of his parental rights. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(2), (10). Because reasonable evidence supports the court's order, we affirm.

### BACKGROUND

**¶2**          Rachelle A. ("Mother") and Father are the biological parents of Willie, born January 5, 2018, and Rastas, born January 21, 2017 (collectively, "the children").[1] The Department of Child Safety ("DCS") received a report that Mother gave birth to baby Willie in a motel room in the middle of the night. DCS caseworkers and police officers went to the motel room to check on baby and Mother the next day. When they entered the room, Mother was incoherent and confused. The baby was wrapped in a blanket next to her on the bed. While Father was not present when DCS arrived, Mother explained he helped deliver Willie and tied the umbilical cord with a zip-tie. In the morning, Father called his mother to pick up Rastas, who was present for the birth, and then left to go to work.

**¶3**          At the time DCS arrived, Mother still had not fed the baby — nearly 10 hours after she gave birth. Both Mother and baby were taken to the hospital. Both tested positive for amphetamine, methamphetamine, and marijuana. The baby was admitted and remained in the Neonatal Intensive Care Unit ("NICU") for 20 days while being treated for complications from birth. At the severance hearing, Mother testified she was using methamphetamine and marijuana during her pregnancy and failed to seek prenatal care. DCS located Rastas with his grandmother and took him into

---

[1]      Mother's parental rights to Willie and Rastas were also terminated, but she is not a party to this appeal.

DCS custody because of concerns that DCS was unable to implement a danger plan that grandmother or parents would be willing to follow.

¶4        DCS subsequently filed a dependency petition, alleging the children were dependent regarding Father because of neglect—he failed to protect the children from the effects of Mother's substance abuse. Shortly after, DCS filed a petition for termination of Father's parental rights on the grounds of neglect and that he had parental rights to another child terminated within the preceding two years for the same cause and is currently unable to discharge parental responsibilities due to the same cause. *See* A.R.S. § 8-533(B)(2), (10).

¶5        In June and September 2016, Father's parental rights had been terminated to three other children due to neglect. Those three children, like the new baby, were all born substance exposed. The DCS caseworker who worked on the prior cases testified that Father knew about Mother's drug use but failed to see the severity of it. DCS also noted concerns in the previous cases about the condition of the home—there were times when the family did not have utilities and the family had been evicted because the house was unsanitary. Finally, the DCS caseworker testified that Father would not engage in services provided by DCS and "refused to help with anything in regards to [Mother]."

¶6        In this case, Father continued to refuse services from DCS. Father emailed the DCS caseworker, stating he would not participate in services because they did not help him in his prior dependency and termination. Regarding the children in this case, DCS's concerns were the ongoing substance abuse, not engaging in services, and not identifying and making behavior changes to make the children safe.

¶7        After hearing evidence from DCS, Mother, and Father, the juvenile court found that statutory grounds existed to terminate Father's parental rights to the children. The court found Father had prior rights to other children terminated within the preceding two years for the same cause that existed in this case—neglect—and that the evidence established that he remains unable to discharge parental responsibilities due to the same cause. The court also found that termination would be in the children's best interests. The court granted DCS's petition to terminate Father's parental rights and Father timely appealed.

## DISCUSSION

¶8        Father challenges only the court's finding on the statutory ground. He argues the State did not present clear and convincing evidence

sufficient to prove its allegations against him. Consequently, we do not address whether severance is in the best interests of the children.

¶9          Before terminating a parent-child relationship, the juvenile court must find at least one statutory ground by clear and convincing evidence. *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 12 (App. 2011). The juvenile court is in the best position to weigh the evidence and judge the credibility of witnesses and, as such, this court will not reweigh evidence. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286-87, ¶ 16 (App. 2016). We will affirm the juvenile court's decision regarding severance if reasonable evidence supports its factual findings. *Id.* "If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

¶10          Arizona Revised Statutes section 8-533(B)(10) allows termination if "the parent has had parental rights to another child terminated within the preceding two years for the same cause and is currently unable to discharge parental responsibilities due to the same cause." The "same cause" language in subsection (B)(10) "refer[s] to the factual 'cause' that led to the termination . . . and not the statutory ground or grounds that supported that preceding [termination]." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 48, ¶ 11 (App. 2004). When proceeding pursuant to subsection (B)(10), DCS is required to "prove by clear and convincing evidence that it had made a reasonable effort to provide [the parent] with rehabilitative services or that such an effort would be futile." *Id.* at 49, ¶ 15 (quoting *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 193, ¶ 42 (App. 1999)). Even if the record does not support the conclusion that DCS made reasonable efforts to provide appropriate rehabilitative services, we may affirm if the facts indicate the parent "could not have completed all of the services required to remedy the cause making [the parent] unable to discharge parental responsibilities . . . by the time of the severance hearing." *See id.* at 50, ¶ 18.

¶11          Sufficient evidence supports the juvenile court's finding that Father had his parental rights terminated within the preceding two years for the same cause and is unable to discharge parental responsibilities for the same cause. The three children to whom Father's parental rights were terminated in 2016 were all born substance exposed; here, the new baby, Willie, was born substance exposed and a hair follicle test from the older child, Rastas, was positive for marijuana. The juvenile court found Father neglected the children by failing to protect them from Mother's neglect and

chronic continued abuse of dangerous drugs, subjecting the children to an unreasonable risk of harm. The court emphasized that Father's "determined insistence that [M]other be the caretaker of the children notwithstanding her obvious inability to properly do so due to continued use of dangerous drugs" was part of his failure to protect the children. The court found that the "shocking circumstances surrounding [Willie's] birth," demonstrate Father's neglect and failure to protect him from neglect by exposing him to an unreasonable risk of harm to his health. The doctor who treated Willie in the NICU testified that had he not been taken to the hospital as early as he was, his condition could have resulted in death.

¶12 Moreover, the court found Father "has demonstrated a defiant rejection of offers of assistance to himself, [Mother] and both children diligently and earnestly presented by DCS." In both this case and the prior dependency, Father impeded Mother's rehabilitation by insisting she be home to care for the children, leading Mother to end her services, even though it was recommended she continue in treatment outside the home. Again, Father blatantly refused services and would not communicate with DCS. Father sent an email to the DCS caseworker and said, "[w]e will not participate in services as they did us no good when we did them the last times." The current DCS caseworker testified she did not believe Father had remedied the circumstances that caused DCS intervention. Father presented no evidence to support his contention that circumstances have sufficiently changed and he is now able to protect the children from Mother's substance abuse. Thus, sufficient evidence supports the court's findings.

## CONCLUSION

¶13 For the foregoing reasons, we affirm the termination as to Father.



AMY M. WOOD • Clerk of the Court
FILED: AA