NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOHN O., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.O., *Appellees*.

No. 1 CA-JV 19-0353
FILED 5-7-2020

Appeal from the Superior Court in Maricopa County
No. JD36151
The Honorable David O. Cunanan, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

---

**C R U Z**, Judge:

¶1        John O. ("Father") appeals the superior court's order terminating his parental rights to minor child, A.O. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        On May 4, 2017, A.O. was born to Father and Yvette D. ("Mother"). Mother and Father have been reported to the Department of Child Safety ("DCS") multiple times for substance abuse issues dating back to 2012.

¶3        Father was given temporary custody of A.O. when the child was found in the care of Father and Mother's whereabouts were unknown.[1] In August 2018, Father and A.O. resided with A.O.'s paternal grandmother. Father left A.O. with paternal grandmother and did not return until two days later. When Father returned, paternal grandmother asked Father to leave because he appeared to be under the influence of some substance, purportedly heroin. Father wanted to take A.O. with him, but the grandmother refused and called the police. Father eventually left without A.O. and did not return.

¶4        DCS contacted Father shortly after this incident and he admitted that he had been using heroin three times per week for the past month. He also admitted that in the past he used marijuana and unprescribed opiates. DCS filed a dependency petition in September 2018 because of Father's continued substance abuse. A.O. was found dependent as to Father and DCS eventually placed A.O. with her maternal aunt.

---

[1]      The court terminated Mother's parental rights to A.O. on the basis of her history of chronic abuse of dangerous drugs, controlled substances, and/or alcohol. Mother is not a party to this appeal.

¶5   DCS offered Father multiple services to help him reunify with A.O., including substance abuse testing and treatment, transportation, supervised visits with parenting aides, and case aides.

¶6   As characterized by the DCS child safety specialist, Father's participation in these services was poor. From November 2018 to March 2019, Father failed to attend twenty-five scheduled drug tests, and on five occasions provided a diluted urine sample or otherwise refused to provide a sample. In November 2018, Father tested positive for amphetamine, methamphetamine, opiates, morphine, and heroin. At that same time, Father refused a urine analysis. About a month later, Father again tested positive for amphetamine and methamphetamine. Father then stopped testing for about three months. Additionally, Father was required to attend substance abuse treatment. Although Father attended some sessions in November 2018, his attendance tapered off in December 2018 and he then stopped attending for three months.

¶7   In April 2019, the court granted DCS's request to change the case plan from family reunification to termination and adoption. DCS then filed a motion to terminate Father's parental rights on the substance abuse ground.

¶8   DCS offered services again to Father but was not able to refer Father until late May 2019 because Father was hospitalized for a period of time in March 2019, after being attacked by four dogs. While hospitalized, Father was administered oxycodone. After recovering from his injuries, Father engaged in services, initially tested negative for substances, and started substance abuse treatment. Father also completed two parent aide visits. In June 2019, however, Father tested positive for alcohol and did not attend scheduled testing in July and August 2019. Father also stopped attending substance abuse treatment.

¶9   One week before the termination hearing, Father tested positive for methamphetamine. DCS provided testimony that Father's substance abuse was likely to continue for a prolonged period because Father completed drug rehabilitation before and relapsed, failed to complete two substance abuse treatment referrals, and continued to use substances including one week before his parental rights were subject to termination. Additionally, DCS provided testimony that qualified family members were willing to adopt A.O.

¶10   The superior court terminated Father's parental rights to A.O. pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3) and

found termination was in A.O.'s best interests. Father timely appealed. We have jurisdiction pursuant to A.R.S. § 8-235(A) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## DISCUSSION

**¶11**          "Parents possess a fundamental liberty interest in the care, custody, and management of their children," but "parental rights are not absolute." *Kent. K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). To terminate parental rights, the court must find by clear and convincing evidence one of the statutory grounds set forth in A.R.S. § 8-533(B), and by a preponderance of the evidence that termination is in the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018).

**¶12**          Father challenges both the superior court's findings that a statutory ground for termination existed and that termination was in A.O.'s best interests. "Because the juvenile court is in the best position to weigh the evidence and assess witness credibility, we accept the juvenile court's findings of fact if reasonable evidence and inferences support them, and will affirm a severance order unless it is clearly erroneous." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016). Accordingly, "[w]e view the facts in a light most favorable to affirming the trial court's findings." *Maricopa Cty. Juv. Action No. JS-8490*, 179 Ariz. 102, 106 (1994).

I.          Statutory Ground for Termination

**¶13**          Pursuant to A.R.S. § 8-533(B)(3), the court may terminate a parent-child relationship under the following circumstances:

> [T]he parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period.

**¶14**          Father first asserts there was insufficient evidence that his substance abuse interfered with his ability to discharge his parental responsibilities.

**¶15**          Parental responsibilities include the ability to protect and make appropriate decisions for one's child. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 378, ¶¶ 21-22 (App. 2010). It also includes the ability to provide basic needs such as food, shelter, education, and medical

care. *Maricopa Cty. Juv. Action No. JS-5209 & No. JS-4963*, 143 Ariz. 178, 185 (App. 1984).

**¶16**     Contrary to Father's assertion, the record shows Father was unable to meet his parental responsibilities because of his substance abuse. By his own admission, Father "was not present" for A.O. because his substance abuse was "taking control of [his] life." He also stated his use of drugs would "interfere with his life, [and] his ability to be a father." Father admitted he abandoned A.O. for two days so he could use drugs. And he even attempted to take her from paternal grandmother's home when he was under the influence and had no other place to reside. On another occasion, while Mother was hospitalized and unable to care for the child, Father left A.O.'s brother, also a minor, at the hospital with Mother. In short, Father's substance abuse caused Father to absent himself from parenting duties, to be unemployed, and to be unable to provide A.O. with stable housing and other basic needs.

**¶17**     Although Father admits he has a history of substance abuse, Father asserts it appears the superior court did not take into account Father's period of sobriety during the case.

**¶18**     We assume the superior court has considered evidence presented before making a decision. *Fuentes v. Fuentes*, 209 Ariz. 51, 55-56, ¶ 18 (App. 2004). In fact, the superior court said on the record it considered all the evidence presented. The only evidence presented of Father's alleged eight-month sobriety was his own self-serving statement, and that evidence is inconsistent with Father's failed drug tests, including testing positive for methamphetamine a week before the termination hearing. *See Raymond F.*, 224 Ariz. at 379, ¶ 29 (saying a parent's "temporary abstinence from drugs and alcohol does not outweigh [a parent's] significant history of abuse or [a parent's] consistent inability to abstain during [the] case"). The superior court is in the best position to assess witness credibility, and we decline the invitation to reweigh the evidence. *See Demetrius L.*, 239 Ariz. at 3, ¶ 9.

**¶19**     Finally, Father asserts that there was insufficient evidence to believe that Father's inability to parent would continue into the near future. The superior court, however, can consider a parent's "prior substance abuse in evaluating whether reasonable grounds existed to conclude [that the parent's] inability to discharge parental responsibilities would continue for a prolonged indeterminate period." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 20 (App. 2016). This evidence includes "the length and frequency of [a parent's] substance abuse, the types of substances abused,

behaviors associated with the substance abuse, prior efforts to maintain sobriety, and prior relapses." *Id.*

¶20        In this case, the record reflects Father abused various substances for at least three years.  Father admitted to using unprescribed opiates for about six months, which resulted in him attending a drug rehabilitation program in 2017.  Even so, Father relapsed shortly after.  Just prior to A.O.'s removal, Father was using heroin three times per week for an extended period of time.  As stated previously, *see supra* ¶¶ 6-9, during the pendency of the case, Father tested positive for amphetamine, methamphetamine, opiates, morphine, heroin, and alcohol.  The substance abuse treatment provider diagnosed Father with severe opioid use disorder.  The provider observed that Father had consumed opioids in large amounts over long periods of time, demonstrating a persistent desire for and tolerance of illegal drugs, and had been unable to cut back use or eliminate his cravings despite multiple efforts in the past.

¶21        Father's years of substance abuse of many highly addicting drugs, multiple failed attempts to maintain sobriety, multiple relapses—including one week before the termination hearing—and failure to commit to substance abuse treatment when recommended, are reasonable grounds to find that Father's inability to parent would continue for a prolonged indefinite period.

II.        Best-Interests Determination

¶22        The court must also find the termination of the parent-child relationship is in the child's best interests.  A.R.S. § 8-533(B).  "The 'child's interest in stability and security' must be the court's primary concern." *Alma S.*, 245 Ariz. at 150, ¶ 12 (citation omitted).  "[T]ermination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Id.* at ¶ 13.  Benefits include a child's prospective adoption and stability in a current placement. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 8 (App. 2016).

¶23        Father acknowledges DCS presented evidence that A.O. was adoptable by qualified relatives, including A.O.'s grandmother who testified she was willing to adopt A.O.  Additionally, A.O.'s needs were being met at her current placement.

¶24        Father argues it appears the superior court did not take into account Father's inability to participate in services for the approximately two months he was hospitalized, and therefore he should be given additional time.   As stated above, we presume the superior court

considered the evidence presented. *See Fuentes*, 209 Ariz. at 55-56, ¶ 18. Moreover, the superior court stated on the record it considered all the evidence. Further, Father had almost one year to rehabilitate and participate in services. DCS referred Father before he was hospitalized and again after he was hospitalized. Father failed to participate consistently in services both times. "[C]hildren should not be forced to wait for their parent to grow up." *Raymond F.*, 224 Ariz. at 378, ¶ 25 (citation omitted). "Accordingly, a child's interest in permanency must prevail over a parent's uncertain battle with drugs." *Jennifer S.*, 240 Ariz. at 287, ¶ 17.

**¶25** Father also asserts termination is not in A.O.'s best interests because the two have a bond. The superior court considered the bond, but such a bond is not dispositive. *Dominique M.*, 240 Ariz. at 98, ¶ 12. Father asks us to reweigh the evidence, and we will not do so. *Demetrius L.*, 239 Ariz. at 3, ¶ 9. Because reasonable evidence supports the finding of best interests, the superior court did not err.

## CONCLUSION

**¶26** For the foregoing reasons, we affirm the termination of Father's parental rights to A.O.



AMY M. WOOD • Clerk of the Court
FILED: AA