NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CRISTINA G., ESTEVANICO P.,
*Appellants*,

v.

DEPARTMENT OF CHILD SAFETY, E.P., N.P.,
*Appellees*.

No. 1 CA-JV 19-0240
FILED 5-19-2020

Appeal from the Superior Court in Maricopa County
No.  JD530983
The Honorable Karen O'Connor, Judge *Retired*

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant Cristina G.*

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant Estevanico P.*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Randall M. Howe and Judge James B. Morse Jr. joined.

---

**W E I N Z W E I G**, Judge:

¶1   Cristina G. ("Mother") and Estevanico P. ("Father") appeal the juvenile court's order terminating their parental rights to two minor children. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2   Mother and Father are the natural parents of N.P., born May 2016, and E.P., born July 2017. They have an extensive history of domestic violence.

¶3   Police responded to the parents' home in June 2017 based on a report of domestic violence. Mother was eight-months pregnant with E.P. at the time. Father had punched Mother in the face and "shoved [Mother] into a TV with such force that it shattered the living room window." Despite the assault, Mother still tried to thwart Father's arrest by barricading the family in the house. Father was drunk, threw beer bottles at police, and used his infant, N.P., as a human shield "to keep police from using a Taser on him or taking him into custody." Both parents were arrested.

¶4   The Department of Child Safety ("DCS") removed N.P. and petitioned for dependency, alleging that Mother could not parent due to domestic violence, neglect and mental health issues, and that Father could not parent because of domestic violence, neglect and substance abuse. DCS also removed E.P. after his birth in July 2017 and petitioned for dependency, alleging the parents could not parent due to neglect and domestic violence. Mother and Father did not contest the dependency issue for either child and the court set the case plan as "family reunification concurrent with severance and adoption."

¶5   DCS then offered Mother and Father reunification services, including drug testing and treatment, parent aide services, psychological evaluations, individual counseling and couples counseling. Mother and Father remained defiant for several months and were "adamant[] that

domestic violence [wa]s not a problem in their relationship." They resisted or refused services during this period, missing drug tests and often becoming combative or aggressive with counselors.

¶6 Mother missed several appointments but finally completed her psychological evaluation with Dr. James Thal in October 2017. Dr. Thal opined that the level of domestic violence between Mother and Father was "alarming, but perhaps more disturbing is [Mother's] complete unwillingness to address the conflict which has occurred and the risk which it posed to children in the home." Dr. Thal concluded that a child in Mother's care would be at risk of abuse due to her domestic violence with Father and that she could not be a minimally adequate parent unless she addressed the "root causes" of that domestic violence.

¶7 Mother and Father reversed course in March 2018. They began to participate meaningfully in counseling sessions and tested negative for drugs. DCS provided Mother with a direct referral to TERROS for individuals and couples counseling. Mother declined the direct referral, however, and instead self-referred to Family Involvement Center for individuals and couples counseling. DCS also formed an intensive family preservation team to work with Mother and Father for 120 days.

¶8 By the summer, Mother and Father had improved enough that DCS allowed unsupervised, in-home and overnight visitation with N.P. and E.P. DCS ultimately returned N.P. and E.P. to Mother and Father in October and November 2018.

¶9 The reunification was short-lived. Mother called police in late November after Father got drunk and struck Mother's head against a door when she tried to leave with the children. Father was arrested. Mother had obtained an order of protection against Father but never served it. A week later, Mother changed her story, calling the incident with Father a misunderstanding and saying she "spaz[zed] out." Mother claimed that police and DCS pressured her to get an order of protection. Mother and Father also insisted they had learned nothing from months of reunification services.

¶10 DCS again removed N.P. and E.P., concluding that neither was safe in the parents' home. The court ordered Mother and Father to participate in various services, including supervised visitation, counseling and drug testing. Their participation was sporadic. Both parents skipped many scheduled visits with the children and often left early when they attended. Father refused to sign a release form allowing DCS to review his

drug tests and urinalysis results. Moreover, neither parent satisfied the court order to complete a second psychological evaluation.

¶11 The juvenile court changed the case plan to severance and adoption in February 2019 and DCS moved to terminate Mother's and Father's parental rights to N.P. and E.P., alleging the grounds of chronic substance abuse for Father and fifteen months' time-in-care for both parents. A.R.S. § 8-533(B)(3), (B)(8)(c). Meanwhile, Mother tested positive for methamphetamine and the DCS case manager received several text messages and voicemails from Father saying that the parents were doing drugs and engaging in domestic violence. And a parent-aide counselor observed several bruises on Mother's jawline, nose and arms.

¶12 The juvenile court issued a detailed minute entry after a contested three-day severance hearing, finding that DCS proved the statutory grounds for termination by clear and convincing evidence and that termination was in the children's best interests by a preponderance of the evidence. Mother and Father timely appealed. We have jurisdiction pursuant to A.R.S. § 8-235(A).

## DISCUSSION

¶13 To terminate parental rights, a court must find by clear and convincing evidence at least one statutory ground set out in A.R.S. § 8-533(B) and must find by a preponderance of the evidence that termination is in the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018). We view the evidence in the light most favorable to sustaining the superior court's findings and will affirm unless no reasonable fact-finder could have found the evidence satisfied the applicable burden of proof. *See Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 95, ¶ 10 (App. 2009).

### I. Statutory Grounds for Termination.

¶14 DCS moved to terminate parental rights based on time in out-of-home placement under A.R.S. § 8-533(B)(8)(c), which requires DCS to prove (1) the children were in out-of-home placement for at least fifteen months, (2) DCS "made diligent efforts to provide appropriate reunification services," (3) the parents are "unable to remedy [the] circumstances of placement," and (4) a "substantial likelihood" that the parents will remain incapable of providing "proper and effective parental care and control in the near future." *Roberto F. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 45, 56, ¶ 51 (App. 2013).

## A. Diligent Efforts.

¶15      Mother first argues the juvenile court erred in finding that DCS made diligent efforts to reunify the family. DCS need not provide "every conceivable service" or futile services to fulfill this obligation, but must "undertake measures with a reasonable prospect of success" and "provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶¶ 34, 37 (App. 1999).

¶16      Mother contends that DCS failed to offer adequate reunification services in the final months before termination (from November 2018 to February 2019) because it asked her to self-refer for individual and couples counseling. But DCS merely encouraged Mother to pursue the same course she previously chose—to self-refer for couples and individual counseling. And nothing in the record shows that Mother ever complained to DCS about having to self-refer or sought a direct referral instead.

¶17      The record also shows serious concerns about whether more counseling could even be effective. Despite prior intensive services, Mother still denied that she and Father had domestic violence issues and minimized Father's abusive behavior, showing that Mother had not learned from the prior reunification services. Dr. Thal shared the concern, finding that Mother had failed to address the root causes of domestic violence and would be unable to do so in the near term. The court also heard from two DCS case managers who echoed the prognosis, stating that Mother had not and would not benefit from more services. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 20 (App. 2013) (DCS "diligently provided appropriate and reasonable reunification services" where record showed that a parent "had not benefitted from the services and additional services would have been futile.").

¶18      DCS otherwise remained engaged with Mother to mixed results. Mother ignored DCS communications at times or expressed anger. Given this record, we cannot say the court's diligent efforts finding was unsupported by reasonable evidence.

## B. Ability to Parent in Near Future.

¶19      Mother next argues the juvenile court "abused its discretion by finding there was a substantial likelihood [she] would not be capable of exercising proper and effective parental care and control in the near future." Mother only points, however, to evidence that favors her position. In doing

so, she asks us to reweigh the evidence presented to the juvenile court and ignore or discount the weight of adverse evidence, which we will not do. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002). We defer to the juvenile court's factual findings because that court heard and weighed the evidence, observed the witnesses and gauged credibility. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286-87, ¶ 16 (App. 2016).

## II.    Best Interests.

**¶20**    Both Mother and Father contest the juvenile court's finding that termination was in N.P.'s and E.P.'s best interests. Termination is in a child's best interests if the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004).

**¶21**    The record supports the court's decision. The court recognized that N.P. and E.P. have the "right to a violence-free, safe, permanent and drug-free home where all of their needs are met" and noted the parents' inability to make necessary behavioral changes. Without severance, however, the court found the children would be exposed to more domestic violence. A DCS case manager testified that both children would benefit from severance because a "stable home, free of domestic violence and drugs" would bring them "consistency and permanency."

**¶22**    Lastly, the juvenile court found that N.P. and E.P. were in adoptive placements where their needs were being met and, if either placement disrupted, they remained adoptable. *See Oscar O.*, 209 Ariz. at 335, ¶ 8 ("In combination, the existence of a statutory ground for severance and the immediate availability of a suitable adoptive placement for the children frequently are sufficient to support a severance order.").

**¶23**    Mother counters that she has shown stable housing and employment, participated in supervised visits and drug testing, and now has parental rights to a third infant child. Father contends the court failed to "adequately consider" his reunification efforts and bond with the children. But Mother and Father do not challenge the court's factual findings. At most, they point to evidence they deem more favorable to their position. We do not reweigh the evidence on appeal. *Jennifer S.*, 240 Ariz. at 286-87, ¶ 16. Because reasonable evidence supports the best interests finding, we will not disturb it.

**CONCLUSION**

¶24 We affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA