NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO O.L. and K.L.

No. 1 CA-JV 25-0161

FILED 04-23-2026

---

Appeal from the Superior Court in Maricopa County
No. JD43872
The Honorable Suzanne E. Cohen, Judge

**AFFIRMED**

---

COUNSEL

John L. Popilek PC, Scottsdale
By John L. Popilek
*Counsel for Appellant Mother*

Arizona Attorney General's Office, Phoenix
By Veronica F. Rios
*Counsel for Appellee Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda Adams
*Counsel for Appellee Children*

_____

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Angela K. Paton and Judge Jennifer M. Perkins joined.

_____

**C A T L E T T**, Judge:

**¶1**        Ashley T. ("Mother") appeals an order terminating her parental rights to her children.  Because reasonable evidence supported termination, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Mother and David L. ("Father") are the parents of O.L., born in August 2015, and K.L., born in May 2019 ("the Children").

**¶3**        Father is not party to this appeal.  Though he appealed the court's termination order, he did not file an opening brief, so we dismissed his appeal.  *See* Ariz. R.P. Juv. Ct. 607(e)(4).

**¶4**        Beginning in 2023, the Department of Child Safety ("the Department") received multiple reports about unsafe conditions in the parents' home and about the Children's poor hygiene.  On January 31, 2024, an investigator from the Department responded to a report that O.L. went to school smelling of urine and wearing misfitting clothes.  O.L. reported he had no food at home, so the school sent him home with food boxes.  He also disclosed he had not showered in two weeks.  And he complained of tooth pain — the investigator observed O.L. had no front teeth.

**¶5**        On January 31, 2024, the Department's investigator tried to meet with the parents at their home, but they would not answer the door. The next day, the investigator returned and saw the Children's maternal aunt leaving.  When the investigator spoke with her, she said she believed the parents were inside using fentanyl.

**¶6**        School staff reported to the Department that on February 1, 2024, Mother appeared to be on drugs when picking up O.L. from school. The investigator contacted Mother, who appeared to be intoxicated and struggled to answer questions. The Department removed the Children that same day and petitioned for dependency.

**¶7** Upon removal, the Department referred Mother to undergo rule-out drug testing at Physician Services Inc. ("PSI"). Mother went to PSI but refused to take a urinalysis ("UA") test, and her hair was too short to provide a hair follicle sample. In March 2024, she returned to PSI to take a UA drug test, which was negative for substances, but she again did not take a hair follicle test.

**¶8** In April 2024, Mother pleaded no contest to dependency. The juvenile court found the Children dependent based on Mother's substance abuse, Mother's filthy home, and the Children's hygiene problems. The court ordered Mother to submit to UA testing until she could complete a hair follicle test.

**¶9** For the next eight months, Mother did not take a drug test or engage in any reunification services, except for visitation. In December 2024, Mother finally took a hair follicle test, which was positive for methamphetamine, opiates, and cocaine. The Department then referred Mother to substance abuse treatment. Mother instead insisted that the positive result was a false positive and declined treatment.

**¶10** In April 2025, the juvenile court ordered Mother to take a 9-panel hair follicle test and complete a drug test that day. Two months later, the court held a hearing and found Mother violated its order regarding drug testing. So the court changed the case plan to severance and adoption, and the Department moved to terminate Mother's parental rights based on chronic substance abuse and because the Children had been with an out-of-home placement for more than 15 months. A.R.S. § 8-533(B)(3), (8)(c).

**¶11** In September 2025, the juvenile court held a termination hearing. The case manager testified that Mother did not engage in reunification services or remedy the circumstances causing the Department to remove the Children from her care. The case manager opined that returning the Children to Mother's care would be unsafe because of ongoing concerns with her substance use. She also testified that the Children now lived with their paternal grandparents, who were meeting the Children's needs.

**¶12** Mother acknowledged her history of substance abuse and prior convictions for drug possession and sale. But she denied any current drug use and insisted she had been sober since August 2014. She testified she worked two jobs and owned her own home. She asserted that her December 2024 hair follicle test was a "false positive" because she never used cocaine. She apologized for not taking the court-ordered drug tests in

April 2025, explaining that she failed to do so because of transportation problems.

**¶13**     Mother also presented evidence that from May to July 2025, she took several UA tests.  These tests were all positive for amphetamines, which Mother attributed to her ADHD medication. Her test dated July 1, 2025, was also positive for tetrahydrocannabinol ("THC") and opiates. She denied substance use but could not explain this positive drug test.

**¶14**     The juvenile court terminated Mother's parental rights.  The court noted Mother's positive test for opiates and THC and found that, "[a]t best, [Mother] has only been sober since July 2, 2025."  The court found Mother failed to engage in substance abuse treatment.  The court concluded the Department proved the substance abuse and 15-month out-of-home grounds by clear and convincing evidence.  A.R.S. § 8-533(B)(3), (8)(c).  The court also concluded that termination was in the Children's best interests because their grandparents are meeting the Children's needs and intend to adopt them, and the Children can remain together.

**¶15**     Mother timely appealed.  Ariz. R.P. Juv. Ct. 603(a)(1)(A).  We have jurisdiction.  A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶16**     Mother argues only that the juvenile court erred by terminating her parental rights because the Department presented insufficient evidence that she had an ongoing issue with substance abuse.

**¶17**     A parent's right to custody and control of their children is fundamental, though not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248 ¶¶ 11–12 (2000).  To terminate parental rights, the juvenile court must find at least one statutory ground for termination by clear and convincing evidence and that termination is in the child's best interests by a preponderance of the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50 ¶ 8 (2018).

**¶18**     When reviewing termination, we accept the court's factual findings if reasonable evidence and inferences support them and affirm the court's legal conclusions unless clearly erroneous. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478–79 ¶¶ 30–31 (2023).  We do not reweigh evidence or reevaluate witness credibility. *Maria G. v. Dep't of Child Safety*, 253 Ariz. 364, 366 ¶ 8 (App. 2022).

**¶19**       Mother challenges only whether sufficient evidence supported termination.  She does not challenge the juvenile court's best interests findings.  Mother argues that because of her sobriety, stable housing, steady employment, and bonded relationship with the Children, there was insufficient evidence supporting termination.

**¶20**       To terminate parental rights under the substance abuse ground, DCS must prove by clear and convincing evidence that a parent's substance abuse renders the parent "unable to discharge parental responsibilities" and reasonable grounds exist "to believe that the condition will continue for a prolonged indeterminate period."  A.R.S. § 8-533(B)(3).

**¶21**       Mother insists that all her drug tests were negative for illegal substances.  But that ignores that her hair follicle test in December 2024 returned positive for methamphetamine, opiates, and cocaine.  And she ignores her positive drug test for opiates and THC just two months before the termination hearing.

**¶22**       Plus, Mother overlooks that she refused the Department's requests to drug test during most of the dependency proceedings, and she did not complete court-ordered drug tests in April 2025.  Based on these missed tests, the juvenile court reasonably inferred that Mother underwent drug testing "when she want[ed] and not when requested" because she knew "she would test positive[.]"  *See Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287–88 ¶¶ 18, 21, 25 (App. 2016) (citing the mother's history of drug use, including during dependency proceedings, and refusal to take drug tests when affirming termination based on substance abuse); *see also Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379 ¶¶ 27–29 (App. 2010) (relying on the father's history of drug use, positive tests, and a two-month period when he did not test to affirm termination based on substance abuse).

**¶23**       Mother also contends she could care for the Children because "she had purchased a home and was gainfully employed."  The juvenile court weighed that testimony and noted that "[o]n the surface it could seem that Mother [was] managing her life well."  But the court still found Mother "denies any current substance use, and the evidence contradicts that assertion."  The court also found that Mother's unresolved substance abuse issues meant she could not parent the Children and that "based on [her] history there [was] every reason to be concerned that [her] drug abuse will continue."  The record supports that Mother insisted she did not have a substance abuse problem despite positive drug tests, that she did not drug test during most of the dependency, and that she refused to engage in

treatment. Again, we do not reweigh reasonable evidence the juvenile court considered. *Maria G.*, 253 Ariz. at 366 ¶ 8.

¶24 Mother understandably emphasizes her close and loving relationship with the Children at the time of termination. We do not doubt that Mother loves her children. In fact, the juvenile court found that Mother had "a bond with the children." But the court considered that bond as part of its best interests findings, which Mother does not challenge. Mother's bond with the Children, while praiseworthy, does not impact the court's substance abuse findings.

¶25 In sum, the record reasonably supports the juvenile court's conclusion that there is clear and convincing evidence that Mother could not discharge her parental responsibilities due to substance abuse issues and that those issues would continue for a prolonged, indeterminate period. *See* A.R.S. § 8-533(B)(3).

¶26 Because the record supports termination based on the substance abuse ground, we need not address the 15 month out-of-home-placement ground. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

## CONCLUSION

¶27 We affirm the juvenile court's termination order.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR